STATE OF NORTH CAROLINA EX REL., EDWIN S. LANIER, COMMISSIONER OF INSURANCE v. JAMES ABNER VINES.

(Filed 15 May 1968.)

**1. Constitutional Law § 7—**

The General Assembly may not delegate its supreme legislative power to any other branch of the State government or to any agency, but as to a specific subject matter it may delegate a limited portion of its legislative power to an administrative agency if it prescribes the standards under which the agency is to exercise the delegated power.

**2. Same; Insurance § 1—**

G.S. 58-44.6, which authorizes the Commissioner of Insurance to impose a civil penalty upon persons subject to Chapter 57 or Chapter 58 of the General Statutes after conducting a hearing and finding that such person has violated a provision of those chapters for which his license may be

suspended or revoked, is not an unconstitutional delegation of legislative power, since the statute prescribes sufficient standards for the exercise of that authority, and since the function of the Commissioner of Insurance under the statute is essentially judicial in nature.

**3. Constitutional Law § 7;    Administrative Law § 3—**

Article IV, § 3, Constitution of North Carolina authorizes the General Assembly to vest administrative agencies with such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purpose for which they were created.

**4. Same—**

The judicial power to impose a civil penalty granted to the Commissioner of Insurance by G.S. 58-44.6 is reasonably necessary as an incident to the accomplishment of the purposes for which the North Carolina Insurance Department was created, and is authorized by Article IV, § 3, Constitution of North Carolina.

**5. Constitutional Law § 10—**

A statute passed by the legislature is presumed to be constitutional and will not be declared void if it can be upheld on any reasonable ground.

**6. Statutes § 4—**

A statute will not be declared unconstitutional unless it is clearly so, and all reasonable doubt will be resolved in favor of its validity.

**7. Parties § 2;    Insurance § 1—**

The Commissioner of Insurance is a real party in interest and is entitled to bring an action in Superior Court to enforce the collection of a civil penalty imposed pursuant to G.S. 58-44.6.

**8. Penalties—**

A civil penalty imposed pursuant to G.S. 58-44.6 is payable to the Treasurer of the State of North Carolina.

APPEAL by defendant from *Canaday, J.,* at the November 1967 Civil Non-Jury Session of WAKE Superior Court.

This is a civil action instituted by the North Carolina Commissioner of Insurance in the Superior Court of Wake County to enforce collection of a civil penalty in the amount of $3000.00 which had been imposed on defendant under authority of G.S. 58-44.6. Prior to 16 January 1967 the defendant, James Abner Vines, was a licensed insurance agent actively engaged in the business of selling insurance within the State of North Carolina. On that date the North Carolina Commissioner of Insurance served notice on defendant that his licenses as an insurance agent in North Carolina were suspended and that an administrative hearing would be held by the Insurance Department on 26 January 1967 to determine whether such licenses should be permanently revoked and whether, in addition or in lieu

thereof, a civil penalty ought to be imposed. A copy of the statement of charges was served with the notice, charging the defendant with having committed 13 separate violations of the North Carolina insurance laws. The charges dealt with the unlawful contracting of insurance with unlicensed companies and with the commission of unfair and deceptive acts.

Pursuant to the notice the matter was heard by the Insurance Commissioner on 26 and 27 January 1967, the defendant being represented by counsel and both parties offering testimony and producing evidence. On 6 April 1967 the Insurance Commissioner issued his decision in which he made full findings of fact on the basis of which he concluded that defendant had willfully violated the insurance laws of North Carolina, specifically G.S. 58-47 and G.S. 58-53.2, and that he had committed acts prohibited by and had failed to comply with certain requirements of G.S., Chap. 58 by virtue of which his licenses were subject to suspension or revocation. The decision permanently revoked any license of the defendant to act as insurance agent or broker in this State and, in addition, ordered defendant to pay to the State of North Carolina a civil penalty in the amount of $3000.00, providing that upon the payment of such amount to the Treasurer of the State of North Carolina the civil penalty should be satisfied and discharged. Defendant did not appeal the decision of the North Carolina Insurance Commissioner. He did comply with the decision to the extent of surrendering his licenses, but he refused to comply with that part of the order which imposed the civil penalty in the amount of $3000.00. The North Carolina Insurance Commissioner then filed this suit in the Superior Court of Wake County, asking for judgment ordering defendant to pay the civil penalty as imposed, with interest from 6 April 1967. Defendant answered, alleging that the provision in G.S. 58-44.6 under which the Commissioner imposed the civil penalty was unconstitutional. Upon a call of the case for trial, defendant also demurred *ore tenus* on the grounds that the complaint did not state facts sufficient to constitute a cause of action in that the statute under which the civil penalty had been imposed was unconstitutional. At the conclusion of the evidence, defendant moved for nonsuit on the further grounds that the action was not instituted by the real party in interest. On 14 November 1967 Judge Canaday entered an order in effect overruling defendant's demurrer and motion of nonsuit and ordering defendant to pay to the Treasurer of North Carolina the sum of $3000.00. From this judgment defendant appealed.

*Attorney General T. W. Bruton, and Assistant Attorney General Bernard A. Harrell for plaintiff appellee.*

*Nance, Collier, Singleton, Kirkman and Herndon for defendant appellant.*

PARKER, J. G.S. 58-44.6 provides that whenever any person subject to the provisions of G.S., Chap. 57 or Chap. 58 shall commit any act or fail to comply with any requirements prohibited or required by said chapters by virtue of which any license is subject to suspension or revocation, "the Commissioner of Insurance, in addition to or in lieu of any other official action that may be taken by him, may, in his discretion, inflict a civil penalty in an amount to be fixed by said Commissioner of Insurance not in excess of twenty-five thousand dollars ($25,000.00), . . ." The statute provides that the Commissioner of Insurance before imposing any penalty or revoking any license shall conduct a hearing and shall make all necessary findings of fact in regard to the matter under inquiry. The hearing is to be conducted under the procedures set forth in G.S. 58-54.6, which requires a notice of hearing and statement of charges to be served upon the person affected, grants such person an opportunity to be heard, provides for the making of a stenographic record of all evidence upon the request of any party and provides for the examination and cross-examination of witnesses under oath. Any person whose rights are affected by the findings and order of the Commissioner of Insurance has the right to appeal to the Superior Court of Wake County, in which event the procedures contained in G.S. 58-9.3 shall be followed.

In the case before us defendant did not avail himself of his right to appeal, nor does he raise any objection as to the conduct of the proceedings before the Commissioner of Insurance leading up to the order revoking his licenses and imposing the civil penalty. He has raised no objection to that portion of the order of the Insurance Commissioner revoking his licenses. He does object to the imposition upon him of any civil penalty, contending that the portion of the statute authorizing the Insurance Commissioner to impose such a penalty is unconstitutional, in that it grants such an unlimited discretion to the Commissioner to be exercised without the guide of sufficient legislative standards that it must be regarded as an attempted delegation of the legislative function offensive both to the State and Federal Constitutions.

In the case of *Turnpike Authority v. Pine Island*, 265 N.C. 109, 143 S.E. 2d 319, the North Carolina Supreme Court, speaking through Sharp, J., said:

"It is settled and fundamental in our law that the legislature may not abdicate its power to make laws nor delegate its *supreme* legislative power to any other coordinate branch or to any agency which it may create. *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310. It is equally well settled that, as to some *specific* subject matter, it may delegate a *limited* portion of its legislative power to an administrative agency *if* it prescribes the standards under which the agency is to exercise the delegated powers."

Examples of attempted delegation of legislative power held to be unconstitutional may be found in *Harvell v. Scheidt,* 249 N.C. N.C. 699, 107 S.E. 2d 549 (statute which granted the Department of Motor Vehicles authority to suspend the driver's license of any person found to be a "habitual violator" of the traffic laws, held to be an unconstitutional delegation of legislative power, since it did not define the term "habitual violator," set no standards for making the determination, and left the matter to the unlimited discretion of the Department); *State v. Williams,* 253 N.C. 337, 117 S.E. 2d 444 (statute requiring persons soliciting students for private schools to obtain a license from the State Board of Education held unconstitutional as an unwarranted delegation of the lawmaking power, since the statute prescribed no standards to guide the administrative Board in granting or withholding the prescribed license); *State v. Harris,* 216 N.C. 746, 6 S.E. 2d 854 (statute purporting to grant unlimited discretion to a commission to set up standards of their own for admission to the business of " 'dry cleaning and/or pressing,' according to whatever rules or regulations they may conceive to be related to the 'public health, safety, and welfare,' " held unconstitutional).

In the case before us the Legislature has delegated to the Insurance Commissioner the power to make "rules and regulations, not inconsistent with the law, to enforce, carry out and make effective the provisions of this chapter (G.S., Chap. 58), and to make such further rules and regulations not contrary to any provisions of this chapter which will prevent practices injurious to the public by insurance companies, fraternal orders and societies, agents and adjusters." G.S. 58-9(1). We are not, however, presently called upon to determine if this delegation of legislative power has been made within sufficiently narrow channels to meet constitutional requirements. While the Commissioner is authorized by G.S. 58-9(1) to make rules and regulations, it should be noted that the section of the statute here under attack, G.S. 58-44.6, does not authorize him to inflict the monetary civil penalty in question upon any finding of a mere viola-

tion of his rules and regulations, but only upon a finding that the person upon whom the penalty is sought to be imposed: (1) Is subject to the provisions of G.S., Chap. 57 or Chap. 58; and (2) that such person has done an act or failed to comply with a requirement "prohibited or required *by said chapters,* by virtue of which any license is subject to suspension or revocation." The Legislature itself, not the Insurance Commissioner, has enacted those chapters of the General Statutes.

Unlike the statutes which were involved in the cases above referred to, the section of the statute here under attack, G.S. 58-44.6, grants no unguided discretion to the Insurance Commissioner to make any laws. It merely gives him discretion to impose a civil penalty in an amount to be fixed by him not in excess of $25,000, but only after he has given due notice to the person to be affected, granted the accused an opportunity to be heard, conducted a hearing, subpœnaed and examined witnesses, received oral and documentary evidence, caused a stenographic record of all evidence and proceedings to be made upon the request of any party, "made all necessary findings of fact in regard to the matter under inquiry," and based thereon has determined that the accused has committed some act or failed to comply with some requirements of G.S., Chap. 57 or Chap. 58.

The functions to be exercised by the Insurance Commissioner and the discretion granted to him by G.S. 58-44.6 here under attack were essentially judicial rather than legislative in nature. The Commissioner was granted no power to create any new law. The Legislature itself, not the Insurance Commissioner, enacted the laws. The Legislature did impose upon the Commissioner the duty to "see that all laws of this State governing insurance companies . . . are faithfully executed." G.S. 58-9(1). To enable him to perform this duty, the Legislature has granted him certain limited judicial powers and functions. The Legislature had the constitutional right and power to do exactly this. Article IV, § 3 of the North Carolina Constitution provides:

"The General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. Appeals from administrative agencies shall be to the General Court of Justice."

The judicial powers granted to the Commissioner of Insurance by G.S. 58-44.6, including the discretionary power to impose the civil penalty within the limit provided after conducting the proceedings

and making the appropriate findings as required by the statute, were, in our view, "reasonably necessary as an incident to the accomplishment of the purposes" for which the North Carolina Insurance Department was created. Certainly we cannot say these powers were so clearly not reasonably necessary for the accomplishment of such purposes as to invoke the judicial power to declare the statute unconstitutional. "The presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if such legislation can be upheld on any reasonable ground." *Ramsey v. Veterans Commission*, 261 N.C. 645, 135 S.E. 2d 659. "If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people." *Glenn v. Board of Education*, 210 N.C. 525, 187 S.E. 781. We therefore hold that the Legislature acted within its constitutional powers in enacting G.S. 58-44.6, and defendant's demurrer based on the contention that the statute was unconstitutional was properly overruled.

In view of the statutory duty imposed upon the Insurance Commissioner to see that the laws of this State relating to the business of insurance are faithfully executed, the Commissioner has a very real interest in seeing that his orders and decisions are carried out. The limited judicial powers which have been vested in him by the Legislature do not include the judicial power to enforce his own orders or decisions. For that purpose he must necessarily resort to the courts of this State and in any court proceedings instituted by him for that purpose he is a real party in interest within the meaning of G.S. 1-57. Therefore defendant's motion for nonsuit on the grounds that this action was not instituted by the real party in interest was properly overruled.

We also hold that the provision in the judgment directing the defendant to pay the amount of the penalty to the Treasurer of the State of North Carolina was correct. While G.S. 58-44.6 does not itself specify to whom the civil penalty is to be paid, G.S. 58-63(4) does direct the Commissioner of Insurance to "collect all other fees and charges due and payable into the State treasury by any company, association, order, or individual under his department," and G.S. 58-62 directs him to pay the full amount of such funds monthly to the State Treasurer. By clear implication of those sections, the amount of any monetary civil penalty imposed and collected as authorized by G.S. 58-44.6 should also be paid over to the State Treasurer, and there was no error in the judgment so directing.

Affirmed.

CAMPBELL and MORRIS, JJ., concur.