# COURT OF APPEALS

OF

# NORTH CAROLINA

AT

# RALEIGH

IN THE MATTER OF: THE APPEAL FROM THE CIVIL PENALTY ASSESSED FOR VIOLATIONS OF THE SEDIMENTATION POLLUTION CONTROL ACT ADMINISTERED BY THE DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT BY DENNIS W. HARRIS AND WIFE, NATALIE G. HARRIS AND ROY J. HALL

No. 8710SC430

(Filed 15 November 1988)

1. **Administrative Law § 8— review of agency decision—failure to cross-appeal—waiver of error**

    Insofar as the trial court may have erroneously failed to render conclusions concerning all the statutory grounds for review of an agency decision raised by the petition for review, petitioners' failure to cross-appeal any such error waives consideration of such error by the appellate court. N.C.G.S. § 150A-52; App. Rule 10(a).

2. **Administrative Law § 8— agency decision—appeal to superior court—constitutional issue not presented**

    An assertion that an agency's assessment of a civil penalty under N.C.G.S. § 113A-64 was arbitrary and capricious did not present for review in the superior court the question of whether the statute constituted a legislative grant of judicial power prohibited by Art. IV, § 3 of the N.C. Constitution.

3. **Administrative Law § 4— civil penalty not based on absolute discretion**

    An assessment of a civil penalty by the Department of Natural Resources and Community Development under N.C.G.S. § 113A-64 for violations of the Sedimentation Pollution Control Act was not improperly based upon the Secretary's "absolute" discretion but was instead based upon numerous penalty factors set forth in an administrative regulation which was reasonably related to the Act's administration and enforcement. The assessment was not rendered arbitrary and capricious because it was based upon penalty factors

1

In the Matter of Appeal from Civil Penalty

set forth in a properly adopted administrative regulation rather than in the statute itself.

4. **Administrative Law § 3; Constitutional Law § 10.3— civil penalty—no agency discretion permitted**

Art. IV, § 3 of the N.C. Constitution does not permit an administrative agency to assess a civil penalty which varies in amount with *any* agency discretion.

5. **Administrative Law § 3; Constitutional Law § 10.3— violations of Sedimentation Pollution Control Act—civil penalty—unlawful delegation of judicial power**

The attempted grant of authority to the Secretary of the Department of Natural Resources and Community Development in N.C.G.S. § 113A-64 to assess a civil penalty of up to one hundred dollars per day for violations of the Sedimentation Pollution Control Act is not reasonably necessary to accomplishment of the Department's purposes and constitutes a legislative grant of judicial power prohibited by Art. IV, § 3 of the N.C. Constitution.

Judge PHILLIPS concurs in the result.

Judge BECTON dissenting.

APPEAL by respondent from *Smith (Donald L.), Judge.* Judgment entered 10 February 1987 in Superior Court, WAKE County. Heard in the Court of Appeals 28 October 1987.

*Beach & Correll, P.A., by J. Michael Correll, for petitioner-appellees.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Daniel F. McLawhorn and Assistant Attorney General Walter M. Smith, for respondent-appellant.*

GREENE, Judge.

This appeal arises from an attempt by the Department of Natural Resources and Community Development (the "Department") to assess a civil penalty against petitioners for violations of the Sedimentation Pollution Control Act of 1973 (the "Act"). *See* N.C.G.S. Sec. 113A-50 *et seq.* (1983). The administrative record tends to show petitioners Harris and Hall own and have subdivided an approximately eighteen acre tract of land in Caldwell County, North Carolina. In enlarging a subdivision of this tract, petitioners allegedly disturbed approximately two and one-half acres of land by grading, cutting and filling in order to construct a street. Petitioners had previously paid the Department civil penalties in connection with earlier phases of the sub-

division's development. Subsequent inspections by the Department revealed that petitioners continued to violate various requirements of the Act. The Department sent petitioners a Notice of Violation which specified the violations of the Act, the steps necessary to correct them, set a deadline for compliance and warned that a civil penalty could be imposed if the violations were not corrected. After the alleged violations were not corrected, the Department assessed a $4,200 civil penalty against petitioners pursuant to Section 113A-64 which provides in part:

> Any person who violates any of the provisions of this [Act] . . . shall be subject to a civil penalty of not more than one hundred dollars . . . . Each day of a continuing violation shall constitute a separate violation under G.S. 113A-64(a)(1) . . . . The Secretary . . . shall determine the amount of the civil penalty to be assessed . . . and shall make written demand for payment upon the person responsible for the violation . . . . If payment is not received or equitable settlement reached within 30 days after demand for payment is made, the Secretary shall refer the matter to the Attorney General for the institution of a civil action in the name of the State in the superior court of the county in which the violation is alleged to have occurred to recover the amount of the penalty . . . .

N.C.G.S. Sec. 113A-64(a)(1)-(2) (1983).

Petitioners subsequently challenged this assessment in a hearing before a Department hearing officer whose findings, conclusions and proposed decision were adopted by the Secretary in his final assessment and demand for payment in October 1985. Upon petitioners' appeal to superior court, the trial court concluded the Department's assessment under Section 113A-64 was "not affected by error of law" but vacated the penalty as arising from a legislative grant of judicial power prohibited by Article IV, Section 3 of the North Carolina Constitution. The Department appeals the judgment of the superior court.

As this case commenced before 1 January 1986 and as there is no other procedure for judicial review of the Department's penalty assessment under Section 113A-64, the general scope of

our review is governed by former Section 150A-51 (codified 1 January 1986 as N.C.G.S. Sec. 150B-51). N.C.G.S. Sec. 150A-51 (1978 & 1984 Cum. Supp.); N.C.G.S. Sec. 150A-43 (1978) (administrative procedure act only applies if no other procedure for judicial review); *cf.* N.C.G.S. Sec. 113A-64(a)(2) (1983) (providing for judicial enforcement of civil penalty after Department's final assessment).

Thus, the issues presented are: I) given the errors raised by the Department on appeal, what is the proper scope of judicial review of these proceedings under Section 150A-51; and II) whether petitioners' substantial rights were prejudiced by the Department's assessing a civil penalty under Section 113A-64 (A) in an arbitrary and capricious manner based solely on the Secretary's "absolute" discretion, or (B) which arose from a legislative grant to the Department of a judicial power prohibited by Article IV, Section 3 of the North Carolina Constitution.

I

Section 150A-51 permits our courts to reverse or modify agency decisions if a petitioner's substantial rights have been prejudiced because the agency's findings, inferences, conclusions, or decision are:

> (1) in violation of constitutional provisions; or (2) in excess of the statutory authority or jurisdiction of the agency; or (3) made upon unlawful procedure; or (4) affected by other error of law; or (5) unsupported by substantial evidence . . . in view of the entire record as submitted; or (6) arbitrary or capricious.

It is always " 'necessary . . . to determine under which criterion for review the Court of Appeals [and the superior court] should address' " the proceeding. *Brooks v. McWhirter Grading Co., Inc.,* 303 N.C. 573, 579, 281 S.E. 2d 24, 28 (1981) (parenthetical in original) (quoting *State ex rel. Util. Comm'n v. Bird Oil Co.,* 302 N.C. 14, 20-21, 273 S.E. 2d 232, 236 (1981)). In determining the superior court's and our own scope of review under Section 150A-51, we are guided by our Supreme Court's statement that "the proper scope of review can be determined only from an examination of the issues presented for review by the appealing party. The nature of the contended error dictates the applicable

scope of review." *Bird Oil,* 302 N.C. at 21, 273 S.E. 2d at 236. Review in this court is further limited to the exceptions and assignments of error properly noted to the superior court's judgment. *Watson v. N.C. Real Estate Comm'n,* 87 N.C. App. 637, 639, 362 S.E. 2d 294, 296, *disc. rev. denied,* 321 N.C. 746, 365 S.E. 2d 296 (1987).

As the Department correctly stated in its brief to the superior court, the statutory grounds raised by the petition for review under Section 150A-51 challenged the Secretary's assessment as made upon unlawful procedure, as affected by other error of law, as unsupported by substantial evidence, and as arbitrary and capricious. *Cf.* Sec. 150A-51(3), (4), (5), (6). However, after noting its consideration of the record, arguments and briefs, the trial court simply found the assessment was not "[a]ffected by error of law," but vacated the penalty as arising from an "unlawful delegation of absolute discretion to the Secretary" which was not "reasonably necessary" to the Department's purposes as required by Article IV, Section 3 of the North Carolina Constitution. Although neither the petition for judicial review nor supporting briefs raised any specific constitutional grounds, the trial court found petitioners' complaint that the civil penalty was "arbitrary, excessive and without adequate guidelines" constituted an allegation the penalty arose from a transfer of judicial power to the Department prohibited by Article IV, Section 3. Article IV, Section 3 states that "the General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created." N.C. Const. art. IV, sec. 3 (1970).

[1] We first note the trial court's apparent conclusion under Section 150A-51(4) that the penalty was not "affected by error of law" does not specifically address petitioners' contentions that petitioner Hall had not been properly notified and that various findings and conclusions were not supported by substantial evidence. However, petitioners have neither assigned any error to that conclusion nor to the trial court's failure to make additional conclusions concerning the other grounds for review arguably raised by the petition for judicial review. Thus, insofar as the trial court may have erroneously failed to render conclusions concerning *all* the statutory grounds for review raised by the peti-

tion for review, petitioners' failure to cross-appeal any such error to this court waives our consideration on appeal. *Watson,* 87 N.C. App. at 639, 362 S.E. 2d at 296; N.C.G.S. Sec. 150A-52 (1983); N.C.R. App. P. 10(a).

[2] While the superior court did not specifically address all the errors asserted in the petition for review, the court conversely based its judgment on a constitutional objection that was apparently not asserted in the petition or in supporting briefs to the trial court. Petitioners did not specifically challenge the constitutionality of Section 113A-64 but only complained the Department's assessment was arbitrary, excessive and not based on adequate guidelines. While arbitrary and capricious agency action is itself prohibited by federal and state due process, we reject the court's reasoning that any assertion of arbitrary agency action necessarily requires the agency's action be reviewed for compliance with every other requirement under our state and federal constitutions, much less that it specifically asserts a violation of Article IV, Section 3. There is a rebuttable presumption that an administrative agency has properly performed its official duties. *See In re Broad and Gales Creek Community Ass'n,* 300 N.C. 267, 280, 266 S.E. 2d 645, 654 (1980). As Section 150A-51(1) charges petitioners with proving their "substantial rights" may have been constitutionally violated, petitioners here had the burden to establish their substantial rights were prejudiced by a constitutional defect in the Department's assessment. *See Raleigh Mobile Home Sales, Inc. v. Tomlinson,* 276 N.C. 661, 668-69, 174 S.E. 2d 542, 548 (1970); *State ex rel. Comm'r of Ins. v. North Carolina Rate Bureau,* 300 N.C. 381, 428-29, 269 S.E. 2d 547, 578 (1980). The record does not demonstrate that petitioners ever asserted this proposition, much less proved it. In apparently raising that constitutional issue *sua sponte,* the trial court did not apply "the standard which deals most directly with the alleged error, the gravamen of the petitioners' complaint [which] is the proper scope of review." *In re Appeal of North Carolina Savings and Loan League,* 302 N.C. 458, 465, 276 S.E. 2d 404, 409 (1981).

Thus, we think the superior court misperceived the proper scope of its review since the record nowhere demonstrates petitioners ever raised any constitutional issues in a manner requiring the superior court pass on the constitutional validity of any assessment under Section 113A-64. *See North Carolina Rate*

*Bureau,* 300 N.C. at 428-29, 269 S.E. 2d at 578 (declining to review constitutional question on direct appeal where no prior assertion that appellant's substantial rights may have been prejudiced by constitutional defect); *cf. In re Gorski v. North Carolina Symphony Society, Inc.,* 310 N.C. 686, 690-92, 314 S.E. 2d 539, 542 (1984) (petitioners could raise issue on appeal to superior court not previously raised in administrative hearings). However, as the trial court vacated the Department's assessment based on an interpretation of Article IV, Section 3 which the Department has properly challenged on appeal to this court, we will nevertheless address that constitutional ground in the exercise of our supervisory jurisdiction. *See Rice v. Rigsby,* 259 N.C. 506, 511-12, 131 S.E. 2d 469, 472-73 (1963) (where defendant did not properly raise constitutional error but trial court addressed it, Supreme Court invoked supervisory power to consider); *Stillwell Enterprises, Inc. v. Interstate Equip. Co.,* 300 N.C. 286, 288-89, 266 S.E. 2d 812, 814 (1980) (Court of Appeals had supervisory power to consider improperly raised question as matter of "appellate grace").

We thus limit our review to the two basic errors assigned by the Department to the superior court's conclusions that (A) Section 113A-64 authorizes the Department to assess civil penalties based solely on the Secretary's "absolute discretion" and (B) therefore any civil penalty assessed under Section 113A-64 violates Article IV, Section 3 of the North Carolina Constitution.

## II

### A

[3] We reject the trial court's conclusion that the Department's assessment under Section 113A-64 was based on the Secretary's "absolute" discretion. The Secretary adopted the hearing officer's findings and conclusions that petitioners had violated the Act for fifty-six days. Based upon his weighing pertinent penalty factors set forth at 15 N.C. Adm. Code 4C.006 in light of the "Guidelines for Assessing Pollution Control Act Penalties" (the "Guidelines"), the Secretary also adopted the hearing officer's Conclusion No. Four that a penalty of $4,200 ($75.00 × 56 days) was

> reasonable given the nature, extent and duration of the violations, the number of site inspections conducted by the division, the number of communications with Harris-Hall, the

ineffectiveness of the steps taken, the failure to adhere to the plans submitted, the average degree of difficulty of compliance, and the previous record of compliance of the violator.

The eight penalty factors quoted above are included among thirteen penalty factors specified in 15 N.C. Adm. Code 4C.006. The Guidelines mentioned are intended to systematize the administrative officer's application of these factors by assigning "point" values to each factor and then deriving a penalty amount based on the point total. However, the penalty could be increased or decreased if the resulting penalty was deemed unfair in light of other stated legitimate factors. The Guidelines also generally guide the administrative officer in reducing or waiving penalties based on such factors as the weakness of the Department's case or the cost of litigation.

The trial court's conclusion that the Department's assessment was based on the Secretary's "absolute" discretion presents the question whether the Department acted in an arbitrary and capricious manner without adequate legislative guidelines. *See Adams v. North Carolina Dept. of Natural and Economic Resources*, 295 N.C. 683, 697-98, 249 S.E. 2d 402, 411 (1978). Although what constitutes arbitrary and capricious action requires a flexible definition under Section 150A-51(6), our Supreme Court has stated certain relevant principles:

Agency decisions have been found arbitrary and capricious, *inter alia,* when such decisions are 'whimsical' because they indicate a lack of fair and careful consideration; when they fail to indicate 'any course of reasoning and the exercise of judgment,' or when they impose or omit procedural requirements that result in manifest unfairness in the circumstances though within the letter of statutory requirements . . .

*North Carolina Rate Bureau,* 300 N.C. at 420, 269 S.E. 2d at 573 (citations omitted). The Legislature guards against arbitrary and capricious agency action by authorizing adequate guiding standards which "insure that the decision-making by the agency is not arbitrary and unreasoned and that the agency is not asked to make important policy choices which might just as easily be made" by the appropriate branches of government. *Adams,* 295 N.C. at 697-98, 249 S.E. 2d at 411; *cf. North Carolina Rate Bureau,*

300 N.C. at 420, 269 S.E. 2d at 573 (holding order arbitrary and capricious in part because no adequate guidelines for compliance).

The Department's assessment of the monetary penalty in this case was not arbitrary and capricious. The penalty assessed by the Department was within the statutory limits provided in Section 113A-64. The findings and conclusions concerning the administratively promulgated factors underlying the Department's assessment do not evidence a "lack of fairness or careful consideration" or the Secretary's "absolute" discretion. The record instead evidences the Secretary's reasoned weighing of the penalty factors announced in 15 N.C. Adm. Code 4C.006 which are reasonably related to the Act's administration and enforcement.

We reject the contention that the Guidelines for applying the penalty factors were not used by the Secretary as they had not been adopted at the time the hearing officer originally proposed the $4,200 penalty. The copy of the Guidelines in the record indicates the Guidelines were adopted 23 January 1984. Petitioners have in any event not challenged the Secretary's adoption of Finding No. 39 which states, "the amount of the penalties were [sic] determined under the Guidelines . . . which were adopted January 23, 1984 and used on a trial basis prior thereto." The Secretary adopted the hearing officer's proposed penalty on 14 October 1985—twenty-one months after the Guidelines had been adopted.

In any event, we do not believe the Department's assessment would be rendered arbitrary and capricious had the Department not adopted the highly specific Guidelines for assessing civil penalties. No substantial right of petitioners would be prejudiced by a civil penalty based upon the Secretary's application of the stated penalty factors absent formally adopted Guidelines: petitioners do not have a substantial right to calculate in advance to the penny whether the financial benefits of violating the Act outweigh the possible expense of civil penalties.

Nor is the Department's assessment rendered arbitrary and capricious because it is based on penalty factors set forth in a properly adopted administrative regulation rather than in Section 113A-64 itself. *See Westmoreland v. Laird*, 364 F. Supp. 948, 951 (E.D.N.C. 1973), *aff'd per curiam*, 485 F. 2d 1237 (4th Cir. 1973) (violation of regulation by agency is violation of statute). As Pro-

fessor Davis states, "Standards formulated and announced by administrative agencies can just as effectively protect against arbitrary action as standards formulated and enacted by legislative bodies." K. Davis, 2 *Administrative Law Treatise* Sec. 2.11 at 69 (Supp. 1970). The Act in general and Section 113A-64 in particular provide sufficient guidance for the Department's promulgating penalty factors based on its experience and expertise in enforcing the Act since "it is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances." *Adams*, 295 N.C. at 698, 249 S.E. 2d at 411.

Since the penalty factors must reflect the Department's trial-and-error experience in enforcing the Act in order to be effective, it is not necessary to require their ongoing enactment by the Legislature. Even so, we note Section 113A-64 was amended effective 2 June 1987 (after this penalty was finally assessed in October 1985) and now sets forth five factors to be considered by the Department in assessing a civil penalty. N.C.G.S. Sec. 113A-64(a)(3) (Cum. Supp. 1988) (factors include degree of harm, cost of rectifying damage, money saved by petitioner by non-compliance and prior record of compliance). Several of the penalty factors upon which the Department based its assessment are included among those factors considered under the amended statute.

We thus conclude the Department's assessment was not based upon the Secretary's "absolute" discretion but was instead based upon numerous penalty factors which are reasonably related to the Act's administration and enforcement and resulted in a fair and reasoned penalty assessment. We accordingly reject the trial court's conclusion that the Department's assessment was based upon the Secretary's "absolute" discretion.

B

[4, 5]  Citing *Young's Sheet Metal and Roofing Inc. v. Wilkins*, 77 N.C. App. 180, 334 S.E. 2d 419, *disc. rev. denied*, 316 N.C. 202, 341 S.E. 2d 574 (1986), the trial court reasoned that Section 113A-64 granted the Secretary "absolute" discretion to assess a civil penalty which was not "reasonably necessary" to the Act's enforcement. The trial court thus held the Department's assessment

was prohibited by Article IV, Section 3 of our constitution. We have above rejected the trial court's premise that Section 113A-64 granted the Secretary *absolute* discretion to assess civil penalties. However, we believe our Supreme Court clearly held in *State ex rel. Lanier v. Vines*, 274 N.C. 486, 164 S.E. 2d 161 (1968), that Article IV, Section 3 of our state constitution does not permit an administrative agency to assess a civil penalty whose amount varies with *any* agency discretion. We must therefore affirm the superior court's conclusion that our state constitution does not permit the Department's penalty assessment under Section 113A-64.

Article IV, Section 3 states that "the General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created." The *Lanier* Court stated that, "Whether a judicial power is 'reasonably necessary as an incident to the accomplishment of the purposes for which' an administrative office or agency was created must be determined in each instance in the light of the purpose for which the agency was established and in the light of the nature and extent of the judicial power undertaken to be conferred." 274 N.C. at 497, 164 S.E. 2d at 168. The application of Article IV, Section 3 thus requires three questions be answered: (1) For what purposes was the agency created? (2) Which peculiarly "judicial" power has the General Assembly attempted to vest in the agency? and (3) Is the Legislature's grant of such judicial power reasonably necessary as an incident to the accomplishment of the purposes for which the agency was created?

First, the purposes for which the Department was created are generally stated by Section 113-3 and Section 113-8. Section 113-3 states in part that "it shall be the duty of the Department . . . to aid . . . in the promotion of the conservation and development of the natural resources of the State [and] . . . a more profitable use of lands and forests . . . ." N.C.G.S. Sec. 113-3(a)(1), (2) (1987). Section 113-8 states that the Department "shall have the duty of enforcing all laws relating to the conservation of marine and estuarine resources." N.C.G.S. Sec. 113-8 (1987). One of these laws is the Act, the purpose of which is "to provide for the creation, administration, and enforcement of a program . . . which

will permit development of this State to continue with the least detrimental effects from pollution by sedimentation." N.C.G.S. Sec. 113A-51 (1983).

Second, the disputed "judicial" power vested in the Department by Section 113A-64 is the power to assess a civil penalty of not more than one hundred dollars for each day the Act is violated. Our Supreme Court analyzed the judicial power to assess a civil penalty in *Lanier*. In that case, former Section 58-44.6 provided that the Insurance Commissioner could impose a civil penalty varying from a nominal sum to $25,000 for each violation of insurance statutes or regulations. The Court reasoned:

> Thus far, the statute is an exercise of the legislative power. . . . Obviously, however, someone must determine the amount of the penalty to be inflicted in each case. This application of the law, which has been enacted by the Legislature, to the facts found in a specific case, so as to make the penalty commensurate with the conduct of the agent in question, is of the essence of judicial power.

274 N.C. at 496, 164 S.E. 2d at 167. The Court further stated, "the power to conduct a hearing, to determine what the conduct of an individual has been and, in the light of that determination, to impose upon him a penalty, within limits previously fixed by law, so as to fit the penalty to the past conduct so determined and other relevant circumstances, is judicial in nature, not legislative." *Id.* at 495, 164 S.E. 2d at 166. As in *Lanier*, the "judicial" power here disputed is the power to assess a varying civil penalty—in this case up to one hundred dollars per day—"commensurate" with petitioners' violation of a statute.

The remaining question is thus whether the specific judicial power to assess a varying civil penalty up to the legislative maximum of one hundred dollars per day is "reasonably necessary" to the accomplishment of the Department's purposes. The reasonable necessity of each legislative grant of judicial power must be determined "in each instance in light of the purpose for which the agency was established and in light of the nature and extent of the judicial power undertaken to be conferred." *Id.* at 497, 164 S.E. 2d at 168. However, it would appear the *Lanier* Court necessarily determined the unconstitutionality of any agency

penalty whose amount varied in the discretion of the agency since the Court specifically held there was "no reasonable necessity for conferring upon the Commissioner the judicial power to impose . . . a monetary penalty, *varying, in the Commissioner's discretion*, from a nominal sum to $25,000 for each violation." 274 N.C. at 497, 164 S.E. 2d at 167-68 (emphasis added). Indeed, we note that in 1983 the Legislature repealed the civil penalty statute struck down in *Lanier* and enacted a new statute effective 10 July 1985 which requires the Commissioner petition a court of competent jurisdiction in order to assess a monetary penalty varying from $500 to $40,000. N.C.G.S. Sec. 58-9.7 (Cum. Supp. 1988) (also permitting license suspension or revocation in addition to monetary penalty).

However, this court has subsequently attempted to distinguish *Lanier* and upheld a statutory civil penalty which was (1) limited to $2,000, (2) could only be assessed in lieu of license revocation or suspension, and (3) circumscribed the agency's discretion by requiring it to consider the "degree and extent of the harm caused by the violation" in assessing the penalty. *North Carolina Private Protective Services Bd. v. Gray, Inc.*, 87 N.C. App. 143, 146-47, 360 S.E. 2d 135, 138 (1987). The *Protective Services Board* court stated:

> We do not find *Lanier* to mean that all administrative civil penalties are *per se* in violation of the State Constitution, and we so hold. Rather, the granting of the judicial power to assess a civil penalty must be 'reasonably necessary' to the purposes for which the agency was created *and with appropriate guidelines for the exercise of discretion.*

*Id.* at 146, 360 S.E. 2d at 137 (emphasis added). Although Article IV, Section 3 only concerns legislative grants of judicial power, we also note that in *Young's Sheet Metal and Roofing, Inc.* this court vacated an agency's penalty assessment as based on "absolute" discretion purportedly prohibited by *Lanier* although the agency's statutes did not expressly grant the agency *any* power to assess a civil penalty. 77 N.C. App. at 183, 334 S.E. 2d at 420.

We believe the *Protective Services Board* decision contradicts the express language, rationale and result of *Lanier*. By attempting to distinguish *Lanier* on the basis of maximum penalty amounts, availability of other sanctions and legislatively pre-

scribed penalty factors, the *Protective Services Board* court limited *Lanier* to prohibiting an agency's assessing civil penalties only when there are inadequate legislative safeguards against excessive agency discretion. The *Lanier* Court's complete statement of its rationale explicitly rejects that interpretation of *Lanier:*

> Decisions of this and other courts to the effect that the Legislature may delegate to administrative officers and agencies its own power to prescribe detailed administrative rules and regulations, so long as the Legislature, itself, prescribes the broad principles and standards within which such administrative authority is to be confined . . . are not applicable to the present case. Here, we are concerned with the extent to which the Legislature has undertaken to confer upon an administrative officer a power which the Legislature, itself, never had. *Thus, we are not here concerned with whether the Legislature has or has not prescribed standards to guide and confine the administrative officer in his exercise of the power conferred. With or without standards to guide the administrative discretion, the Legislature cannot confer upon an administrative officer judicial power, except within the limits specified in Art. IV, Sec. 3, of the Constitution* . . . . Under Article IV, Secs. 1 and 3, . . . the Legislature may [vest an agency with the judicial power to determine penalties within the statutory range] *if, but only if, conferring this segment of the judicial power of the State upon the [agency] is 'reasonably necessary as an incident to the accomplishment of the purposes for which' the [agency] was created . . . . We find, however, no reasonable necessity for conferring upon the Commissioner the judicial power to impose upon an agent a monetary penalty, varying, in the Commissioner's discretion, from a nominal sum to $25,000 for each violation.*

274 N.C. at 496-97, 164 S.E. 2d at 167 (emphasis added) (citation omitted).

The *Lanier* Court specifically approved agency exercise of some "segments" of the judicial power of the state such as (1) holding hearings to (2) determine the facts of an agent's conduct in order to (3) grant or revoke licenses. 274 N.C. at 497, 164 S.E. 2d at 166. However, the Court found no reasonable necessity to

confer upon the agency the "segment" of judicial power here at issue — the power to impose a monetary penalty which varied in the agency's discretion although within certain legislative limits.

The factual background of *Lanier* further supports this understanding of the passage quoted above. Two questions were certified to the *Lanier* Court: (1) whether the civil penalty violated the constitutional requirement of separated powers; and (2) whether the statute "confers upon the Commissioner of Insurance a discretion, subject to no guiding rules or standards, to impose a civil penalty not in excess of $25,000." 274 N.C. at 488, 164 S.E. 2d at 162. The superior court had concluded that the statute did not violate the separation-of-powers doctrine *and* that it contained "adequate safeguards for due process of law and for the imposition of a civil penalty." 274 N.C. at 491, 164 S.E. 2d at 163-64. The Court of Appeals affirmed the superior court in both respects and specifically held that the penalty statute did not confer upon the Commissioner "unguided" discretion. *State ex rel. Lanier v. Vines*, 1 N.C. App. 208, 213, 161 S.E. 2d 35, 37-38 (1968). However, the *Lanier* Court refers to an agency's unguided discretion nowhere but in the passage quoted above: even then, it raises the issue only to dismiss it as a basis for its application of Article IV, Section 3. Thus, as the *Lanier* Court explicitly rejected the relevance of legislative "guidelines" to its "separation-of-powers" analysis, it defies logic to construe *Lanier* to have struck down the civil penalty in that case only because the statute lacked adequate legislative safeguards against unbridled agency discretion.

We also note the *Protective Services Board* focus on the maximum size of the civil penalty and the permitted range of alternative sanctions unnecessarily intrudes on the Legislature's delegation of its own legislative functions. For example, the terms of Section 113A-64 permit the Department to assess a penalty up to $100 each day the violation continues. While the $100 limitation results in penalties which are proportionate to the duration of any violation, there is no maximum limit on the penalty which may be assessed so long as the violation continues. The potential size of the penalty under Section 113A-64 would thus be a constitutional defect under the *Protective Services Board* analysis. However, considerations such as the maximum size of the civil penalty and the availability of alternative enforcement sanctions

are in fact irrelevant to the question whether a civil penalty is a peculiarly "judicial" power reasonably necessary to the accomplishment of an agency's purposes. *Cf. Lanier*, 274 N.C. at 496, 164 S.E. 2d at 167 (since size of penalty is legislative determination, Court did not consider whether penalty was excessive). Since the judiciary does not possess the power to enact specific civil penalties or other alternative enforcement sanctions, these legislative choices are not at issue in determining whether the Legislature has usurped a judicial power which may not be conferred under Article IV, Section 3.

Specifying a penalty's maximum size and/or alternative sanctions and/or penalty factors indeed serves to limit the agency's discretion in assessing penalties. However, the lack of adequate legislative safeguards in assessing monetary penalties is clearly not the constitutional defect addressed in *Lanier*: the *Lanier* Court was instead offended by the Legislature's granting under any circumstances the judicial power to assess a monetary penalty commensurate with a statutory violation, which the Court deemed the "essence" of judicial power. 274 N.C. at 496, 164 S.E. 2d at 167; *cf. id.* at 495-96, 164 S.E. 2d at 166-67 (contrasting approved legislative grants of "quasi-judicial" power with grant of "supreme" judicial power). Thus, the rationale, plain language, and result in *Lanier* permit no other conclusion but that the *Lanier* Court held that the "segment" of the judicial power to impose civil penalties varying within legislative limits is *not* "within the limits specified in Article IV, Section 3 of the Constitution." 274 N.C. at 496, 164 S.E. 2d at 167.

We question the *Lanier* Court's references to "segments" of a single "supreme" judicial power: Article IV, Section 3 clearly contemplates granting a multiplicity of judicial "powers" rather than segments of one indivisible power. However, we do not follow *Lanier* because we necessarily believe it was correctly decided but because it plainly controls the outcome of this case. Nor do we decline to apply the *Protective Services Board* distinctions because they are arguably too broad or intrusive but because their rationale directly contradicts the rationale and result of *Lanier* quoted above. *See Lumley v. Dancy Const. Co., Inc.*, 79 N.C. App. 114, 121-22, 339 S.E. 2d 9, 14 (1986) (statements in Court of Appeals opinion conflicting with Supreme Court opinion held

without precedential value); *see also Cannon v. Miller*, 313 N.C. 324, 327 S.E. 2d 888 (1985).

We concede a major purpose of Article IV, Section 3 is to reconcile the retention of judicial power in the judicial branch required by Article IV, Section 1 with the recognized need to utilize administrative expertise in implementing complicated regulatory schemes such as the Act. While Article IV, Section 1 does not permit the Legislature to "deprive" the judiciary of judicial power, it does allow such power to be shared with administrative agencies in a limited fashion through Article IV, Section 3. N.C. Const. art. IV, sec. 1 (1970) (Legislature may not "deprive" judiciary of powers which pertain to it as "coordinate department of government"). We believe the grant of judicial powers to administrative agencies under Article IV, Section 3 is not different in kind from the Legislature's delegation of its own powers to agencies which our Supreme Court has repeatedly upheld since "the constitutional inhibition against delegating legislative authority does not preclude the Legislature from transferring adjudicative . . . powers to administrative bodies provided such transfers are accompanied by adequate guiding standards to govern the exercise of the delegated powers." *Adams*, 295 N.C. at 697, 249 S.E. 2d at 410. However, the passage from *Lanier* quoted previously explicitly rejects the application to Article IV, Section 3 of those cases upholding the delegation of "legislative" powers so long as the Legislature enacts adequate guidelines for the agency's discretion. *Cf. State v. Harris*, 216 N.C. 746, 754, 6 S.E. 2d 854, 860 (1939) (unlimited discretion to grant licenses without legislative guidelines deemed unconstitutional delegation of legislative function) (cited by *Lanier* as inapplicable).

Given the procedural safeguards set forth by the North Carolina Administrative Procedure Act and the numerous grounds for judicially reviewing the administrative assessment of civil penalties under Section 150A-51 (now Section 150B-51), we fail to see why granting an agency the judicial power to impose a civil penalty — varying within legislative limits but commensurate with the violation in light of appropriate statutory or regulatory guidelines — frustrates the constitutional requirement that only those judicial powers that are "reasonably necessary" to an agency's purposes may be vested by the Legislature.

However, the rationale, holding and plain language of *Lanier* do not permit this analysis. While we agree that *Lanier*, a twenty-year-old case, may not express the "modern" view of an agency's exercise of judicial powers, *Lanier* controls the result in this case; and *Lanier* permits only the judiciary (rather than the agency itself) to assess a varying penalty such as that enacted in Section 113A-64. Rather than rest with the assertion in *Young's Sheet Metal and Roofing* that *Lanier* only prohibits "absolute" agency discretion, the Department's lengthy brief primarily argues *Lanier* should be overturned. We agree that long-term enforcement of the Act would be better served by our Supreme Court's overturning *Lanier* than by our drawing questionable distinctions which *Lanier* has in any event rejected in advance.

Accordingly, we affirm the trial court's conclusion that the Department's assessment of a civil penalty under Section 113A-64 arose from an unconstitutional transfer of judicial power under Article IV, Section 3 which requires the penalty be vacated.

Affirmed.

Judge PHILLIPS concurs in the result.

Judge BECTON dissents.

Judge BECTON dissenting.

I am unpersuaded by the majority's reading of *State ex rel. Lanier v. Vines*. The majority interprets *Lanier* to prohibit, in all cases, agency imposition of "a civil penalty whose amount varies with *any* agency discretion. . . ." (Emphasis supplied.)

Article IV, Sec. 3 of the North Carolina Constitution contemplates that discretionary judicial authority may be granted to an agency when reasonably necessary to accomplish the agency's purposes. Although couched in the negative, the same conclusion was reached by our Supreme Court in *Lanier*:

> . . . With or without standards to guide the administrative discretion, the Legislature cannot confer upon an administrative officer judicial power, *except within the limits specified in Art. IV, Sec. 3, of the Constitution.* . . . The Legislature . . . has undertaken to vest [the] judicial power

> [to determine the penalty amount within the range estab-lished by statute] in an administrative officer. Under Art. IV, Secs. 1 and 3, of the North Carolina Constitution, . . . *the Legislature may do this, if,* but only if, *conferring this segment of the judicial power* of the State upon the [agency] *is "reasonably necessary as an incident to the accomplishment of the purposes for which" the [agency] was created.*

274 N.C. 486, 496-97, 164 S.E. 2d 161, 167 (1968) (emphasis added) (quoting N.C. Const. Art. IV, Sec. 3). Although the court held that the power of license revocation was " 'reasonably necessary' to the effective policing" of the statute, it further held that there was "no reasonable necessity for conferring upon the [agency] the judicial power to impose . . . a monetary penalty, varying, in the [agency's] discretion, from a nominal sum to $25,000 for each viola-tion." *Id.* at 497, 164 S.E. 2d at 167-68.

*Lanier* did not hold that agency exercise of the judicial power to impose a varying penalty offends our Constitution in all cir-cumstances. Instead, the court held that that power was not, upon the facts before it, "reasonably necessary." *Lanier* established that whether our Constitution permits a particular grant of judicial authority should be determined case-by-case:

> *Whether a judicial power is "reasonably necessary* as an incident to the accomplishment of the purposes for which" an administrative office or agency was created *must be deter-mined in each instance in the light of the purpose for which the agency was established and in the light of the nature and extent of the judicial power undertaken to be conferred.*

*Id.* at 497, 164 S.E. 2d at 168 (emphasis added) (quoting N.C. Const. Art. IV, Sec. 3).

I believe that the Department's power to impose civil penalties for violation of the Sedimentation Control Act *is* reasonably necessary, (1) "in the light of the purpose for which the agency was established" — in part to promote development of natural resources while limiting detrimental effects from erosion and sedimentation pollution, and (2) "in the light of the nature and extent of the judicial power undertaken to be conferred" — here, to impose civil penalties legislatively confined to a maximum of $100 for each violation of the Act.

Mechanical application of the *Lanier* result ignores the progress made in the way the role of administrative agencies is regarded. As our Supreme Court stated in *State ex rel. Comm'r of Ins. v. North Carolina Rate Bureau,*

> Clearly, . . . we must expect the Legislature to legislate only so far as is reasonable and practical to do and we must leave to [the agency] the authority to accomplish the legislative purpose, *guided of course by proper standards. . . . The modern tendency is to be more liberal in permitting grants of discretion to administrative agencies* in order to ease the administration of laws as the complexity of economic and governmental conditions increases. . . . North Carolina cases have long been consistent with this "modern tendency."

300 N.C. 381, 402, 269 S.E. 2d 547, 563 (1980), *reh'g denied,* 301 N.C. 107, 273 S.E. 2d 300 (1980) (emphasis added) (citations omitted). And in *Adams v. North Carolina Dep't of Natural and Economic Resources,* the court stated that transfers of "adjudicative and rule-making powers to administrative bodies [are not constitutionally precluded] provided such transfers are accompanied by adequate *guiding standards* to govern the exercise of the delegated powers." 295 N.C. 683, 697, 249 S.E. 2d 402, 410 (1978) (emphasis added) (citations omitted).

In the case before us, sufficient guiding standards exist in the statute to check administrative discretion. Explicit "mandatory standards" are articulated in N.C. Gen. Stat. Sec. 113A-57, providing specific guidance to the Department in its determination whether violations of the Act have occurred. Administrative discretion is further limited by the minimal penalty the Department may impose for violations.

Finally, I cannot support the majority's choice to decline to follow our recent construction of *Lanier* in *North Carolina Private Protective Services Board v. Gray, Inc.,* 87 N.C. App. 143, 360 S.E. 2d 135 (1987). There we interpreted *Lanier* to permit an agency, pursuant to statute, to assess a civil penalty up to $2,000 in lieu of license revocation. We stated then, and I still agree, that

> . . . *Lanier* [does not] mean that all administrative civil penalties are *per se* in violation of the State Constitution.

. . . Rather, the granting of the judicial power to assess a civil penalty must be "reasonably necessary" to the purposes for which the agency was created and with appropriate guidelines for the exercise of the discretion.

287 N.C. App. at 146, 360 S.E. 2d at 137. By its holding, the majority unjustifiably overrules *North Carolina Private Protective Services Board.* I maintain that that case was correctly decided and should have governed the court's decision in the case before us.

For the reasons above, I respectfully dissent.