IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1360

 Filed: 20 November 2018

Wake County, No. 14 CVD 10295

JOHN TYLER ROUTTEN, Plaintiff,

 v.

KELLY GEORGENE ROUTTEN, Defendant.

 Appeal by defendant from orders entered by Judge Michael Denning in Wake

County District Court. Heard in the Court of Appeals 20 September 2018.

 Jill Schnabel Jackson for plaintiff-appellee.

 R. Daniel Gibson for defendant-appellant.

 TYSON, Judge.

 Kelly Georgene Routten (“Defendant”) appeals from orders entered on 4 April

2017 and several other interim and temporary orders. We affirm in part, vacate in

part, and remand.

 I. Background

 John Tyler Routten (“Plaintiff”) and Defendant were married on 23 March

2002 and separated from each other on 26 July 2014. Their union produced two

children, a daughter and a son. The daughter, “Hanna,” was born 2 June 2004. The

son, “Billy,” was born 17 July 2012.
 On 21 July 2014, Plaintiff allegedly assaulted Defendant by pushing her onto

the floor of their home. Defendant was granted an ex parte domestic violence

protective order (“DVPO”) against Plaintiff and was granted temporary custody of the

parties’ children on 25 July 2014. On 4 August 2014, Plaintiff filed a complaint (“the

Complaint”) against Defendant for child custody, equitable distribution, and a motion

for psychiatric evaluation and psychological testing.

 On 13 August 2014, Defendant voluntarily dismissed the DVPO. That same

day the parties entered into a memorandum of judgment/order, which established a

temporary custody schedule for the children and a temporary child support and post-

separation support arrangement. Defendant purportedly did not receive a copy of the

Complaint until after she had dismissed the DVPO and signed the memorandum of

judgment/order. Defendant filed her answer to the Complaint on 6 October 2014 and

asserted several counterclaims, including claims for alimony, child custody, child

support, and attorney’s fees. The parties participated in mediation and the trial court

entered an equitable distribution order by consent of the parties on 29 April 2015.

 On 21 September 2015, trial began on the parties’ claims for permanent child

custody, permanent child support, and Defendant’s counterclaims for alimony and

attorney’s fees. At the conclusion of the trial on 24 September, the trial judge

indicated Defendant needed to submit to a neuropsychological evaluation before he

could decide permanent child custody.

 On 21 December 2015, the trial court entered a custody and child support

order, which established a temporary custody arrangement and ordered Defendant

to “take whatever steps are necessary to obtain a complete neuropsychological

evaluation no later than June 15, 2016.” The 21 December 2015 order also provided
that “[t]his case shall be set for a 3-hour custody review hearing on April 5, 2016” and

“for a 6.5-hour subsequent hearing for review of custody and entry of final/permanent

orders in July or August of 2016, once those calendars are available for scheduling

trial dates.” On 5 April 2016, the trial court conducted an in-chambers conference

with the parties’ counsel to determine the status of Defendant’s neuropsychological

evaluation.

 On 27 April 2016, the trial court entered an order scheduling a three-hour

hearing on 4 August 2018 to hear evidence relating to Defendant’s neuropsychological

evaluation and evidence relating to the best interests of the children. The 27 April

2016 order also decreed:

 2. Defendant shall take whatever steps are necessary to
 obtain a complete neuropsychological evaluation no later
 than June 15, 2016. . . .

 3. Defendant shall notify Plaintiff’s counsel in writing no
 later than May 15, 2016, of the name and address of the
 provider who shall perform the neuropsychological
 evaluation of Defendant.

 4. Any written report resulting from the
 neuropsychological evaluation shall be produced to
 Plaintiff’s counsel no later than ten (10) days prior to
 August 4th, 2016. . . .

 On 29 July 2016, Defendant filed a motion for a continuance and protective

order in which she alleged that she had complied with the trial court’s prior orders to

obtain a neuropsychological evaluation. Defendant’s 29 July 2016 motion was mailed

to Plaintiff’s counsel five days prior to the scheduled 4 August 2016 final custody

hearing. The motion did not contain the date the neuropsychological evaluation was

performed or the name and address of the provider who had performed the

evaluation.
 The final custody hearing took place on 4 August 2016. At the outset of the

hearing, Defendant’s trial counsel disclosed for the first time that Duke Clinical

Neuropsychology Service had performed a neuropsychological evaluation of

Defendant on 21 April 2016. During the hearing, Defendant admitted: (1) she had

not disclosed to Plaintiff’s counsel the 21 April 2016 evaluation by Duke prior to the

4 August 2016 hearing; (2) she had notified Plaintiff’s counsel that Pinehurst

Neuropsychology, not Duke, would perform the evaluation; and (3) she had filed

motions in June and July 2016 suggesting that a neuropsychological evaluation had

not yet been performed.

 At the conclusion of the hearing, the trial court transferred sole physical

custody of the children to Plaintiff pursuant to a memorandum of order/judgment

until a complete permanent custody order could be drafted and entered. The trial

court entered a permanent child custody order on 9 December 2016 and an order for

alimony and attorney’s fees. On 9 and 13 December 2016, Defendant filed pro se

motions for a new trial and relief from judgment pursuant to Rules 59 and 60 of the

North Carolina Rules of Civil Procedure.

 Following a series of subpoenas filed by Defendant following the trial court’s

final custody hearing on 4 August 2016, Plaintiff filed a motion for a temporary

restraining order and preliminary injunction on 13 December 2016. Plaintiff’s motion

asserted, in part:

 17. The subpoenas issued by Defendant seek the
 production of documents related to child custody issues.
 Child custody has been fully litigated and there are no
 hearings scheduled (or motions pending) that relate to
 child custody.
 18. Defendant is representing herself pro se and appears
 to be using the subpoena process through the clerk’s office
 to (improperly) attempt to continue litigating a claim that
 has been fully and finally litigated.

 The trial court granted Plaintiff a temporary restraining order on 13 December

2016. The trial court conducted a hearing on Plaintiff’s preliminary injunction motion

on 3 January 2017. At the hearing, the trial court ordered Defendant to calendar her

pending Rule 59 and 60 motions within ten days for the next available court dates.

Defendant calendared the hearing for the Rule 59 and 60 motions for 1 March 2017.

On 25 January 2017, the trial court entered an order granting Plaintiff’s preliminary

injunction. The trial court’s order decreed, in relevant part: “Defendant is hereby

restrained and prohibited from requesting issuance of a subpoena in this action by

the Wake County Clerk of Superior Court or by any court personnel other than the

assigned family court judge.”

 On 20 February 2017, Defendant filed amended Rule 59 and Rule 60 motions.

The trial court concluded Defendant was entitled to the entry of a new order

containing additional findings of fact and conclusions of law. On 6 March 2017, the

trial court entered an amended permanent child custody order (“the Amended

Order”). The Amended Order, in part, granted Plaintiff sole legal custody and

physical custody, denied Defendant visitation with the children, but allowed Plaintiff

to “permit custodial time between the children and Defendant within his sole

discretion” and allowed Defendant two telephone calls per week with the children.

 Defendant appeals the trial court’s Amended Order and several other “related

interim or temporary orders and ancillary orders.”
 We note Defendant initially chose to prosecute her appeal pro se. This Court

provided the opportunity for this case to be included in the North Carolina Appellate

Pro Bono Program. Following this Court’s inquiry, Defendant accepted

representation by a pro bono attorney under this Program. Upon Defendant’s

acceptance of pro bono representation, this Court ordered the parties to file

supplemental briefs by order dated 23 August 2018.

 II. Jurisdiction

 Jurisdiction lies in this Court over an appeal of a final judgment regarding

child custody in a civil district court action pursuant to N.C. Gen. Stat. §§ 7A-27(b)(2)

(2017) and 50-19.1 (2017).

 III. Standard of Review

 In a child custody case, the standard of review is “whether there was competent

evidence to support the trial court’s findings of fact[.]” Barker v. Barker, 228 N.C.

App. 362, 364, 745 S.E.2d 910, 912 (2013) (quoting Shear v. Stevens Bldg. Co., 107

N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992)). “[T]he trial court’s findings of fact

are conclusive on appeal if supported by substantial evidence, even if there is

sufficient evidence to support contrary findings. ‘Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.’ ” Peters v. Pennington, 210 N.C. App. 1, 12-13, 707 S.E.2d 724, 733 (2011)

(quoting State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)) (citations

omitted). “Whether [the trial court’s] findings of fact support [its] conclusions of law

is reviewable de novo.” Hall v. Hall, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904

(2008) (alteration in original) (citation omitted).
 “Absent an abuse of discretion, the trial court’s decision in matters of child

custody should not be upset on appeal.” Everette v. Collins, 176 N.C. App. 168, 171,

625 S.E.2d 796, 798 (2006). “Abuse of discretion results where the court’s ruling is

manifestly unsupported by reason or is so arbitrary that it could not have been the

result of a reasoned decision.” Davis v. Kelly, 147 N.C. App. 102, 106, 554 S.E.2d 402,

405 (2001) (citation omitted).

 IV. Issues

 On appeal, Defendant contends: (1) the trial court abused its discretion by

ordering Defendant to submit to a neuropsychological evaluation; (2) the trial court

abused its discretion by delegating its authority to determine Defendant’s visitation

rights to Plaintiff; (3) the trial court infringed Defendant’s constitutionally protected

parental rights by awarding sole custody and visitation rights to Plaintiff; (4) the trial

court violated N.C. Gen. Stat. § 50-13.2(e)(3) (2017) by only granting Defendant

telephone visitation; (5) the trial court entered numerous findings not supported by

competent evidence; (6) the trial court infringed Defendant’s procedural due process

rights; (7) the trial court abused its discretion in calculating the amount of alimony;

(8) the trial court abused its discretion in denying her claim for attorney’s fees; and

(9) the trial court abused its discretion with respect to her originally filed Rule 59

motion and three contempt motions at a hearing on 1 March 2017.

 V. Analysis

 A. Neuropsychological Evaluation

 Defendant argues the trial court exceeded its authority under Rule 35 of the

North Carolina Rules of Civil Procedure by ordering her to submit to a

neuropsychological evaluation by a non-physician. Rule 35 states that a court “may
order [a] party to submit to a physical or mental examination by a physician” when

that party’s physical or mental condition is in controversy. N.C. Gen. Stat. § 1A-1,

Rule 35 (2017). In Defendant’s pro se briefs, she does not refer to a specific order she

asserts was erroneously entered. In Defendant’s supplemental pro bono brief, she

specifically argues the trial court erred, or abused its discretion, by entering an order

on 3 October 2014 requiring her to submit to an examination by a neuropsychologist.

 The trial court’s 3 October 2014 order required both parties to submit to

psychological, not neuropsychological, evaluations by Dr. Kuzyszyn-Jones.

Defendant did not include the 3 October 2014 order in her notice of appeal listing the

various orders of the trial court she appealed from. “Proper notice of appeal is a

jurisdiction requirement that may not be waived.” Chee v. Estes, 117 N.C. App. 450,

452, 451 S.E.2d 349, 350 (1994). “[T]he appellate court obtains jurisdiction only over

the ruling specifically designated in the notice of appeal as the ones from which the

appeal is being taken.” Id. Defendant’s arguments concerning the requirement of the

3 October 2014 order to obtain a psychological evaluation by Dr. Kuzyszyn-Jones are

waived and dismissed. See id.; N.C. R. App. P. 3(d).

 B. Father’s Discretion over Visitation

 Defendant also argues the trial court violated the statute and abused its

discretion by granting Plaintiff the sole authority to “permit custodial time between

the children and Defendant” in the Amended Order. Under N.C. Gen. Stat. § 50-

13.1(a), “custody” includes “custody or visitation or both.” N.C. Gen. Stat. § 50-13.1(a)

(2017).

 The trial court’s Amended Order concluded “It is not in the children’s best

interests to have visitation with Defendant.” The Amended Order then provides:
 2. Physical Custody. The minor children shall reside with
 Plaintiff. Plaintiff may permit custodial time between the
 children and Defendant within his sole discretion, taking
 into account the recommendations of [Hanna’s] counselor
 as to frequency, location, duration, and any other
 restrictions deemed appropriate by the counselor for
 permitting visitation between [Hanna] and [Defendant].
 (Emphasis supplied).

 Defendant cites In re Stancil, 10 N.C. App. 545, 179 S.E.2d 844 (1971), in

support of her argument. Stancil involved a custody dispute between a child’s mother

and the paternal grandmother. Id. at 546-47, 179 S.E.2d at 845-46. In the trial court’s

custody award to the grandmother, it granted the grandmother “the right to

determine the times, places and conditions under which she could visit with [the

child].” Id. at 550, 179 S.E.2d at 848. This Court stated:

 When the question of visitation rights of a parent arises,
 the court should determine from the evidence presented
 whether the parent by some conduct has forfeited the right
 or whether the exercise of the right would be detrimental
 to the best interest and welfare of the child. If the court
 finds that the parent has by conduct forfeited the right or
 if the court finds that the exercise of the right would be
 detrimental to the best interest and welfare of the child, the
 court may, in its discretion, deny a parent the right of
 visitation with, or access to, his or her child; but the court
 may not delegate this authority to the custodian.

Id. at 552, 179 S.E.2d at 849 (emphasis supplied). Here, although the trial court had

determined, without finding Defendant had forfeited her parental visitation rights,

that it was “not in the children’s best interests to have visitation with Defendant.”

The trial court contradicted its finding and conclusion, the above rule stated in

Stancil, and delegated its judicial authority to Plaintiff to determine Defendant’s

visitation. As with the trial court in Stancil, the trial court delegated the

determination of Defendant’s visitation with her children to Plaintiff, at “his sole
discretion.” The trial court erred and abused its discretion by delegating the

determination of Defendant’s visitation rights with her children to Plaintiff. Id. The

trial court cannot delegate its judicial authority to award or deny Defendant’s

visitation rights to Plaintiff or a third-party. See id.; Brewington v. Serrato, 77 N.C.

App. 726, 733, 336 S.E.2d 444, 449 (1985) (“[T]he award of visitation rights is a

judicial function, which the trial court may not delegate to a third-party” (internal

quotation marks and citation omitted)).

 The decretal portion of the Amended Order is vacated and the matter

remanded for the trial court to determine an appropriate custodial and visitation

schedule consistent with this Court’s opinion in Stancil. See Stancil, 10 N.C. App. at

552, 179 S.E.2d at 849.

 C. Electronic Visitation

 Defendant also argues the trial court abused its discretion by allowing her only

electronic “visitation,” specifically, two telephone calls per week with the children.

Defendant raises her electronic visitation arguments for the first time on appeal.

Based upon our holding to vacate the custodial and visitation schedule from the

Amended Order and remand for additional findings and conclusions, it is unnecessary

to address the merits of Defendant’s arguments concerning electronic visitation.

 However, the trial court is instructed on remand that: “electronic

communication with a minor child may be used to supplement visitation with the

child. Electronic communication may not be used as a replacement or substitution

for custody or visitation.” N.C. Gen. Stat. § 50-13.2(e) (2017) (emphasis supplied).

 “Electronic communication” is defined as “contact, other than face-to-face

contact, facilitated by electronic means, such as by telephone, electronic mail, instant
messaging, video teleconferencing, wired or wireless technologies by Internet, or

other medium of communication.” Id. If on remand, the trial court does not determine

Defendant is unfit or engaged in conduct inconsistent with her parental rights, the

trial court may only order electronic visitation as a supplement to Defendant’s

visitation rights and not as a replacement for Defendant’s visitation rights. See id.;

In re T.R.T., 225 N.C. App. 567, 573-74, 737 S.E.2d 823, 828 (2013).

 D. Constitutionally Protected Status as Parent

 Defendant contends the trial court violated her constitutionally protected

interest as parent by awarding sole legal and physical custody of the children to

Plaintiff without making a finding that she was unfit or had acted inconsistently with

her constitutionally protected status as parent. We agree.

 The Amended Order purported to deny Defendant all custody and visitation

with her children, effectively terminating her parental rights.

 The Supreme Court of North Carolina held in Owenby v. Young, that:

 [T]he Due Process Clause of the Fourteenth Amendment
 ensures that the government does not impermissibly
 infringe upon a natural parent’s paramount right to
 custody solely to obtain a better result for the child. [Adams
 v. Tessener, 354 N.C. 57, 62, 550 S.E.2d 499, 503 (2001)
 (citing Troxel v. Granville, 530 U.S. 57, 72-73, 147 L. Ed.
 2d 49, 61 (2000))]. Until, and unless, the movant
 establishes by clear and convincing evidence that a natural
 parent’s behavior, viewed cumulatively, has been
 inconsistent with his or her protected status, the “best
 interest of the child” test is simply not implicated. In other
 words, the trial court may employ the “best interest of the
 child” test only when the movant first shows, by clear and
 convincing evidence, that the natural parent has forfeited
 his or her constitutionally protected status.

357 N.C. 142, 148, 579 S.E.2d 264, 268 (2003). Our Supreme Court also recognized

in Price v. Howard, that:
 A natural parent’s constitutionally protected paramount
 interest in the companionship, custody, care, and control of
 his or her child is a counterpart of the parental
 responsibilities the parent has assumed and is based on a
 presumption that he or she will act in the best interest of
 the child.

346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997) (citations omitted). Each parent’s

constitutional rights are equal and individually protected. See id.; Quilloin v. Walcott,

434 U.S. 246, 255, 54 L. Ed. 2d 511, 519 (1978) (“We have recognized on numerous

occasions that the relationship between parent and child is constitutionally

protected.”).

 Before denying a parent all custodial and visitation rights with his or her

children, the trial court: (1) must first make a written finding that the parent was

unfit or had engaged in conduct inconsistent with his protected status as a parent,

before applying the best interests of the child test; and (2) make these findings based

upon clear, cogent, and convincing evidence. Moore v. Moore, 160 N.C. App. 569, 573-

74, 584 S.E.2d 74, 76 (2003); see Petersen v. Rogers, 337 N.C. 397, 403-404, 445 S.E.2d

901, 905 (1994) (“[A]bsent a finding that parents (i) are unfit or (ii) have neglected

the welfare of their children, the constitutionally-protected paramount right of

parents to custody, care, and control of their children must prevail.”).

 Based upon the trial court’s failure to find Defendant is either unfit or has

acted inconsistently with her constitutionally protected status as a parent, we vacate

the trial court’s conclusions of law and custody portions of its order. If on remand,

the trial court purports to deny Defendant all custody and visitation or contact with

her children, the trial court must make the constitutionally required findings based
upon clear, cogent, and convincing evidence. Owenby, 357 N.C. at 148, 579 S.E.2d at

268; Moore, 160 N.C. App. at 573-74, 584 S.E.2d at 76.

 The dissenting opinion claims this holding “diverges from established

precedent” and “recognizes a new constitutional right” citing Respess v. Respess, 232

N.C. App. 611, 754 S.E.2d 691 (2014). However, the dissenting opinion either

overlooks or disregards the precedents set by the Supreme Court of the United States,

the Supreme Court of North Carolina, and this Court, including In re Civil Penalty,

324 N.C. 373, 379 S.E.2d 30 (1989).

 E. In re Civil Penalty

 The Supreme Court of North Carolina issued a decision in Lanier, Comr. of

Insurance v. Vines, 274 N.C. 486, 164 S.E.2d 161 (1968). Subsequently, this Court

interpreted the holding of Lanier in N.C. Private Protective Servs. Bd. v. Gray, Inc.,

87 N.C. App. 143, 360 S.E.2d 135 (1987). A later decision from this Court found Gray

had “contradict[ed] the express language, rationale and result of Lanier,” and refused

to follow that decision. In re Civil Penalty, 92 N.C. App. 1, 13-14, 373 S.E.2d 572, 579

(1988). Upon review, the Supreme Court concluded “that the effect of the majority’s

decision . . . was to overrule Gray,” and rejected this Court’s attempt to do so. In re

Civil Penalty, 324 N.C. at 384, 379 S.E.2d at 37. “Where a panel of the Court of

Appeals has decided the same issue, albeit in a different case, a subsequent panel of

the same court is bound by that precedent, unless it has been overturned by a higher

court.” Id.

 This sequence of events in In re Civil Penalty is precisely what happened after

this Court’s unanimous decision in Moore. The Supreme Court issued a decision in

Owenby, holding that “[u]ntil, and unless, the movant establishes by clear and
convincing evidence that a natural parent’s behavior, viewed cumulatively, has been

inconsistent with his or her protected status, the ‘best interest of the child’ test is

simply not implicated.” Owenby, 357 N.C. at 148, 579 S.E.2d at 268. The Court’s

unanimous decision in Moore, applied that precise result, holding: “[o]nce conduct

that is inconsistent with a parent’s protected status is proven, the ‘best interest of the

child’ test is applied.” 160 N.C. App. at 573, 587 S.E.2d at 76. No further appellate

review of Moore occurred.

 As occurred In re Civil Penalty, “[s]everal pages of the [Respess] opinion were

devoted to a detailed rejection of the [Moore] panel’s interpretation of [Owenby].” In

re Civil Penalty, 324 N.C. at 383-84, 379 S.E.2d at 36. The panel in Respess violated

our Supreme Court’s holding of In re Civil Penalty when it refused to follow the

unanimous binding ten-year precedent set forth in Moore. See In re Civil Penalty, 324

N.C. at 384, 379 S.E.2d at 37; Respess, 232 N.C. App. at 624-25, 754 S.E.2d at 700-

01.

 Further, numerous other precedential cases, also decided prior to Respess,

have cited to Moore for the holding at issue, contrary to the assertion in the dissenting

opinion. See, e.g., Woodring v. Woodring, 227 N.C. App. 638, 644, 745 S.E.2d 13, 19

(2013) (“In the absence of extraordinary circumstances, a parent should not be denied

the right of visitation.” (quoting Moore, 160 N.C. App. at 573, 587 S.E.2d at 76));

Maxwell v. Maxwell, 212 N.C. App. 614, 622-23, 713 S.E.2d 489, 495 (2011) (“we

reverse and remand this matter for further findings of fact as to Plaintiff’s fitness as

a parent or the best interest of the minor children” (citing Moore, 160 N.C. App. at

574, 587 S.E.2d at 77)); Slawek v. Slawek, No. COA09-1682, 2010 WL 3220668, at *6

n.4 (N.C. Ct. App. Aug. 17, 2010) (unpublished) (“To declare a parent unfit for
visitation, there must be ‘clear, cogent, and convincing evidence.’ ” (quoting Moore,

160 N.C. App. at 573, 587 S.E.2d at 76)); Mooney v. Mooney, No. COA08-998, 2009

WL 1383395, at *5 (N.C. Ct. App. May 19, 2009) (unpublished) (“A trial court may

only deny visitation under the ‘best interest’ prong of N.C.G.S. § 50-13.5(i) ‘[o]nce

conduct that is inconsistent with a parent’s protected status is proven.’ ” (quoting

Moore, 160 N.C. App. at 573, 587 S.E.2d at 76)); In re E.T., No. COA05-752, 2006 WL

389731, at *3 (N.C. Ct. App. Feb. 21, 2006) (unpublished) (“The trial judge, prior to

denying a parent the right of reasonable visitation, shall make a written finding of

fact that the parent being denied visitation rights is an unfit person to visit the child

or that such visitation rights are not in the best interest of the child.” (quoting Moore,

160 N.C. App. at 572, 587 S.E.2d at 76)); In re M.C., No. COA03-661, 2004 WL

2152188, at *4 (N.C. Ct. App. Sep. 21, 2004) (unpublished) (“The trial court is

required to make a finding that a natural parent is unfit before denying custody to

that parent.” (citing Moore, 160 N.C. App. 569, 587 S.E.2d 74)); David N. v. Jason N.,

164 N.C. App. 687, 690, 596 S.E.2d 266, 268 (2004) (“The trial court is required to

make a finding that a natural parent is unfit before denying custody to that parent.”

(citing Moore, 160 N.C. App. 569, 587 S.E.2d 74)), rev’d on other grounds, 359 N.C.

303, 608 S.E.2d 751 (2005).

 In Peters v. Pennington, this Court cited Moore, as follows:

 In Moore, this Court stated that the prohibition of all
 contact with a natural parent’s child was analogous to a
 termination of parental rights. The Court reasoned that,
 in order to sustain a ‘total prohibition of visitation or
 contact’ based on the unfitness prong of N.C. Gen. Stat. §
 50-13.5(i), the trial court must find unfitness based on the
 clear, cogent, and convincing evidentiary standard that is
 applicable in termination of parental rights cases.
210 N.C. App. at 19, 707 S.E.2d at 737 (emphasis in original) (citing Moore, 160 N.C.

App at 573-74, 587 S.E.2d at 76-77)).

 Our Supreme Court has not overturned any of this Court’s published opinions

listed above, including Moore, which protect the “constitutionally-protected

paramount right” of each individual parent over the care, custody, and control of their

children. See Petersen, 337 N.C. at 403-404, 445 S.E.2d at 905. The dissenting opinion

does not address or distinguish any of these binding precedents upon this Court.

 Were we to disregard each parent’s individually protected constitutional right,

the following scenario may arise: an unmarried couple conceives a child. The couple

becomes estranged before the child is born, and the father never knows the mother

was pregnant. Years later, after the child is born, the father learns of his child’s

existence and seeks to have a relationship with the child. The father files an action

to seek custody or visitation with his child. Under Respess, the trial court could then

deny the father any custody or visitation solely using the “best interests” test, without

any findings of the father’s unfitness or actions inconsistent with his parental status.

The application of the “best interests” test under this scenario, without findings of

unfitness or actions inconsistent, would be wholly incompatible with our precedents,

which have recognized: “A natural parent’s constitutionally protected paramount

interest in the companionship, custody, care, and control of his or her child[.]” Price,

346 N.C. at 79, 484 S.E.2d at 534; see Quilloin, 434 U.S. at 255, 54 L. Ed. 2d at 519

(“the relationship between parent and child is constitutionally protected”); Owenby,

357 N.C. at 148, 579 S.E.2d at 268; Moore, 160 N.C. App. at 574, 587 S.E.2d at 77.

 The dissenting opinion, and Respess, assert this Court’s holding in Moore was

in conflict with Owenby. Citing the precedents of the Supreme Court of the United
States and the Supreme Court of North Carolina, this Court unanimously stated in

Moore:

 It is presumed that fit parents act in the best interest of
 their children. Troxel, 530 U.S. at 69, 147 L. Ed. 2d at 59.
 A parent’s right to a relationship with his child is
 constitutionally protected. See Quilloin v. Walcott, 434 U.S.
 246, 255, 54 L. Ed. 2d 511, 519 (1978). Once conduct that
 is inconsistent with a parent’s protected status is proven,
 the “best interest of the child” test is applied. Price v.
 Howard, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997).

Moore, 160 N.C. App. at 573, 587 S.E.2d at 76.

 This Court’s application of the rule regarding each parent’s constitutionally

protected individual relationship of custody or visitation with her child in this case

and in Moore is fully consistent with binding precedents and with our Supreme

Court’s holding in Owenby. “[T]he trial court may employ the ‘best interest of the

child’ test only when the movant first shows, by clear and convincing evidence, that

the natural parent has forfeited his or her constitutionally protected status.” Owenby,

357 N.C. at 148, 579 S.E.2d at 268.

 This opinion fully quotes and is consistent with the holding in Owenby and

does not “conspicuously omit[]” any binding language therein, contrary to the

dissenting opinion’s assertion. See id.

 F. Trial Court’s Findings of Fact

 Defendant argues the Amended Order contains numerous findings of fact

which are not supported by competent evidence, and the findings of fact do not

support the trial court’s conclusions of law.

 “Our trial courts are vested with broad discretion in child custody matters.”

Shipman v. Shipman, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citation
omitted). Where substantial evidence in the record supports the trial court’s findings

of fact, those findings are conclusive on appeal, even if record evidence might sustain

findings to the contrary. Id. at 475, 586 S.E.2d at 254 (citation omitted).

 Here, the trial court made fifty-two findings of fact in its Amended Order.

Defendant challenges over twenty of the findings of fact made by the trial court

concerning Defendant’s behavior, Defendant’s misleading statements to Plaintiff’s

counsel and the trial court regarding her neuropsychological evaluation, Defendant’s

health, Defendant’s relationship with Plaintiff, Defendant’s relationship with the

children, and the best interests of the children.

 After careful review of the whole record, we conclude the trial court’s findings

of fact are based upon competent evidence in the record, including the testimony of

the Plaintiff; the parties’ former neighbors, Jennifer and Jared Ober; Dr. Kuzyszyn-

Jones; Defendant’s neurologist, Dr. Mark Skeen; and Defendant’s own testimony

from the September 2015 hearing and the 4 August 2016 hearing. Defendant’s

arguments are overruled.

 Defendant also argues the trial court’s conclusions of law are not supported by

the findings of fact. Based upon our holding to vacate the trial court’s conclusions of

law for the reasons stated above in sections B and D, it is unnecessary to address

these arguments.

 G. Denial of Procedural Due Process Rights

 Defendant also argues the trial court infringed her constitutional rights to

procedural due process by conducting a temporary custody review on 5 April 2016 to

determine the status of Defendant’s obligation to complete the neuropsychological
evaluation. This custody review was conducted in the trial judge’s chambers, and not

in open court.

 Both Plaintiff’s counsel and Defendant’s counsel were present for this

temporary custody review. The trial court did not enter an order based upon this

temporary custody review that altered the custody arrangement specified in the 21

December 2015 temporary custody and child support order. Following the 5 April

2016 custody review hearing, the trial court entered an order setting specific

guidelines for when Defendant should complete the neuropsychological evaluation

ordered by the trial court on 21 December 2015. As a result of the temporary custody

review on 5 April 2016, the trial court only ordered that the permanent custody

review hearing take place on 4 August 2016 and reiterated Defendant’s obligation

under the 5 December 2015 order to obtain a neuropsychological evaluation.

Defendant’s trial counsel offered no objection to the trial court holding the in-

chambers custody review meeting. “A contention not raised in the trial court may not

be raised for the first time on appeal.” Creasman v. Creasman, 152 N.C. App. 119,

123, 566 S.E.2d 725, 728 (2002) (citations omitted).

 Defendant also did not raise her procedural due process arguments in her

amended Rule 59 and Rule 60 motions to set aside the trial court’s permanent custody

order. Id. (“We note that defendant did not raise this issue in his motion to set aside

the judgment. The record does not reflect a ruling on this issue by the trial court”);

N.C. R. App. P. 10(a)(1). These arguments are waived and dismissed.

 H. Domestic Violence
 Defendant also contends the trial court failed to consider evidence of domestic

violence perpetrated by Plaintiff in making its custody determination in the Amended

Order. N.C. Gen. Stat. § 50-13.2(a) (2017) provides, in relevant part:

 An order for custody of a minor child entered pursuant to
 this section shall award the custody of such child to such
 person . . . as will best promote the interest and welfare of
 the child. In making the determination, the court shall
 consider all relevant factors including acts of domestic
 violence between the parties, the safety of the child, and
 the safety of either party from domestic violence by the
 other party.

 The Amended Order indicates it did consider Defendant’s allegations of

domestic violence by Plaintiff. Finding of fact 24 states:

 There was significant conflict between the parties during
 their marriage, which culminated in physical altercations
 between the parties on more than one occasion. Defendant
 testified at length about these altercations during the
 September 2015 trial and described herself as a victim of
 domestic violence, but Plaintiff introduced a recording into
 evidence at the September 2015 trial in which Defendant
 can be heard laughing and attempting to goad Plaintiff into
 a physical altercation. There were two incidents in July of
 2014 (shortly before the parties separated) during which
 Plaintiff attempted to retreat from Defendant during an
 argument by locking himself in another room but
 Defendant forced her way into the room. Furthermore,
 Defendant’s medical records (as introduced into evidence
 by Defendant and/or made available to Plaintiff’s counsel
 for cross-examination purposes at the September 2015
 trial) are inconsistent with her testimony about the alleged
 altercations.

 This finding of fact was supported by substantial competent evidence of

Plaintiff’s testimony and the audio recording referenced therein, which was admitted

into evidence. Additionally, finding of fact 24 in the Amended Order is the same as

finding of fact 22 in the initial permanent custody order. Defendant did not raise the

issue of the trial court’s purported failure to consider domestic violence in her
amended Rule 59 and 60 motions. Defendant had a full opportunity to assert the

trial court failed to consider domestic violence at the 1 March 2017 hearing on her

Rule 59 and 60 motions, but failed to do so. See Creasman 152 N.C. App. at 123, 566

S.E.2d at 728; N.C. R. App. P. 10(a)(1). Defendant may disagree with the weight and

credibility the trial court gave the evidence, but the record clearly establishes the

trial court considered the allegations of domestic violence in determining custody

pursuant to N.C. Gen. Stat. § 50-13.2(a). Defendant’s argument is overruled.

 I. Alimony and Attorney’s Fees

 Defendant next argues the trial court abused its discretion with regard to the

Alimony and Attorney Fee Order entered by the trial court on 9 December 2016, the

same day the trial court entered its initial permanent custody order. Defendant

argues the trial court erred by awarding her alimony for a duration calculated from

the parties’ date of separation and not from the parties’ date of divorce. “Decisions

concerning the amount and duration of alimony are entrusted to the trial court’s

discretion and will not be disturbed absent a showing that the trial court has abused

such discretion.” Robinson v. Robinson, 210 N.C. App. 319, 326, 707 S.E.2d 785, 791

(2011).

 The trial court is required to consider the sixteen factors enumerated in N.C.

Gen. Stat. § 50-16.3A(b) in deciding to award alimony. N.C. Gen. Stat. § 50-16.3A(c)

(“[T]he court shall make a specific finding of fact on each of the factors in subsection

(b) of this section if evidence is offered on that factor.”). “[T]he award of . . . attorney’s

fees in matters of child custody and support, as well as alimony . . . is within the

discretion of the trial court.” McKinney v. McKinney, 228 N.C. App. 300, 307, 745

S.E.2d 356, 361 (2013).
 Here, the trial court made several specific and unchallenged findings of fact

with reference to attorney’s fees and the required statutory factors for determining

alimony. Defendant does not challenge any of these findings of fact or argue that

these findings are not supported by competent evidence in the record. Defendant has

failed to show the trial court abused its discretion in calculating the amount of

alimony awarded or by denying Defendant’s claim for attorney’s fees. Defendant’s

arguments are overruled.

 J. 1 March 2017 Hearing

 Defendant attempts to argue the trial court erred with respect to actions taken

by her own attorney at a hearing on 1 March 2017. This hearing was held on several

motions filed by Defendant. After the trial court entered its original permanent child

custody order and its order on alimony and attorney’s fees on 9 December 2016,

Defendant subsequently filed a pro se Rule 59 motion on 16 December and a pro se

Rule 60 motion on 19 December.

 Defendant obtained new counsel, who then filed amended Rule 59 and Rule 60

motions on 20 February 2017. These motions were heard by the trial court on 1

March 2017, in addition to three pro se contempt motions Defendant had previously

filed.

 At the outset of the 1 March 2017 hearing, Defendant’s counsel stated to the

trial court that the contempt motions “are right now being written up in a voluntarily

dismissal to be dismissed with prejudice as of today.” The trial court then proceeded

to hear Defendant’s amended Rule 59 and Rule 60 motions. The trial court granted

Defendant’s Rule 59 motion and later entered the Amended Order on 6 March 2017.
 Defendant appears to argue the trial court should have considered her original

pro se Rule 59 motion instead of the amended motion filed by her attorney. Defendant

asserts her contempt motions should not have been dismissed on 1 March 2017.

These motions were voluntarily dismissed by Defendant’s own counsel and not by the

trial court. Defendant was present for the 1 March 2017 hearing and did not voice

any disagreement to the trial court over her counsel’s voluntary dismissal of the

contempt motions. Defendant cites no authority to support these arguments.

Defendant fails to establish any error on the trial court’s part with respect to the Rule

59 motion and the voluntary dismissal of her contempt motions. These arguments

are dismissed.

 VI. Conclusion

 The trial court erred and abused its discretion by delegating its authority to

determine Defendant’s visitation rights to Plaintiff and by effectively terminating

Defendant’s parental rights without first making a finding of unfitness or acts

inconsistent with her constitutionally protected status by clear, cogent, and

convincing evidence, and violated the statute by limiting her access to her children to

telephone calls only. Owenby, 357 N.C. at 148, 579 S.E.2d at 268; Moore, 160 N.C.

App. at 573-74, 584 S.E.2d at 76; N.C. Gen. Stat. § 50-13.2(e).

 Defendant has failed to show the trial court abused its discretion in calculating

the amount of alimony, or in denying her claim for attorney’s fees. Defendant has

failed to preserve her arguments concerning the trial court’s ordering of a

neuropsychological evaluation and the trial court’s purported violations of her

procedural due process rights. Defendant’s remaining arguments are overruled and

dismissed for failures to object and preserve.
 The Alimony Order and Attorney Fees Order are affirmed. The trial court’s

conclusions of law and decretal portions of its Amended Order are vacated and

remanded for further proceedings as consistent with this opinion. It is so ordered.

 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

 Judge BERGER concurs with separate opinion.

 Judge INMAN concurs in part, dissents in part, with separate opinion.
 No. COA17-1360 – Routten v. Routten

 BERGER, Judge, concurring.

 I fully concur in the majority opinion, but write separately to address a trend

in this Court’s jurisprudence that has troubling implications.

 In the last few years, this Court increasingly has overruled precedent on the

ground that a case, although published and otherwise controlling, itself failed to

follow an even earlier Court of Appeals or Supreme Court case.1

 At first glance, this approach might seem appropriate. After all, In re Civil

Penalty tells us that one panel cannot overrule another on the same issue. 324 N.C.

373, 384, 379 S.E.2d 30, 36-37 (1989). If it appears a second panel did precisely that

by refusing to follow the precedent set by the first panel, should the third panel faced

with the issue not ignore the second and follow the first? But, what if a fourth panel

comes along and concludes that the second panel properly distinguished or limited

the first panel? That fourth panel could refuse to follow the third panel on the ground

that it improperly overruled the second.

 This may sound more like a law school hypothetical than a real-world problem,

but it is very real. As the case before us here demonstrates, this Court can be trapped

 1 Here are a few examples: State v. Alonzo, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, No.
COA17-1186, 2018 WL 3977546, at *2 (Aug. 21, 2018), temporary stay allowed, ___ N.C. ___, 817 S.E.2d
733 (2018); State v. Jones, ___ N.C. App. ___, ___, 802 S.E.2d 518, 523 (2017); State v. Mostafavi, ___
N.C. App. ___, ___, 802 S.E.2d 508, 513 (2017), rev’d, 370 N.C. 681, 811 S.E.2d 138 (2018); State v.
Meadows, ___ N.C. App. ___, ___, 806 S.E.2d 682, 693-94 (2017), disc. review allowed, ___ N.C. ___,
812 S.E.2d 847 (2018); In re D.E.P., ___ N.C. App. ___, ___, 796 S.E.2d 509, 514 (2017).
 ROUTTEN V. ROUTTEN

 BERGER, J., concurring

in a chaotic loop as different panels disagree, not only on the interpretation of the

law, but also on what law appropriately controls the issue.

 This problem is compounded by the reality that we are an intermediate

appellate court that sits in panels. Ordinarily, the doctrine of stare decisis will

prevent appellate courts from casually tossing away precedent decided just a few

years (or even months) earlier.2 But that precedential effect is much weaker when a

court sits in panels where the judges considering the issue were not necessarily

involved in the earlier decision. As the dissent notes in footnote 4, we make mistakes.

 One solution to this problem is for this Court to write opinions following our

precedent, notwithstanding that panel’s view of the weaknesses and errors within the

current state of the law. In such an opinion, that panel could explain why the

precedent is incorrect and make a direct request for the Supreme Court to use their

power of discretionary review to announce the correct rule.

 2 “The judicial policy of stare decisis is followed by the courts of this state.” Musi v. Town of
Shallotte, 200 N.C. App. 379, 383, 684 S.E.2d 892, 896 (2009) (citation omitted). “Stare decisis is the
preferred course because it promotes the evenhanded, predictable, and consistent development of legal
principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity
of the judicial process.” Janus v. Am. Fed’n of State, Cnty., & Mun. Employees, Council 31, ___ U.S.
___, ___, 201 L. Ed. 2d 924, 954-55 (2018) (citing Payne v. Tennessee, 501 U.S. 808, 827 (1991)).
 “[A]ntiquity has never been a reason for this Court to overrule its own prior case law or that
of the North Carolina Supreme Court; indeed, this Court does not have authority to do so.” Strickland
v. City of Raleigh, 204 N.C. App. 176, 181, 693 S.E.2d 214, 217 (2010) (citation omitted). “When this
Court is presented with identical facts and issues, we are bound to reach the same conclusions as prior
panels of this court.” Smith v. City of Fayetteville, 220 N.C. App. 249, 253, 725 S.E.2d 405, 409 (2012)
(citation omitted).

 2
 ROUTTEN V. ROUTTEN

 BERGER, J., concurring

 But many judges on this Court view this approach as unrealistic.3 The

Supreme Court hears cases on discretionary review primarily because they involve

matters of “significant public interest” or “major significance to the jurisprudence of

the State.” N.C. Gen. Stat. § 7A-31. Though our frequent intramural disputes over

In re Civil Penalty seem significant to us, the underlying legal issues often are

narrow, are of no public interest, and affect only minor or isolated issues within our

jurisprudence. At a high court that hears only seventy or eighty cases on

discretionary review each year, these simply won’t make the cut.

 There is another option. This Court now has the power to sit en banc. See N.C.

Gen. Stat. § 7A-16. When the Supreme Court issued procedural rules for our en banc

review, it instructed that we may sit en banc “to secure or maintain uniformity of the

court’s decisions.” N.C. R. App. P. 31.1(a)(1). This suggests that our Supreme Court

anticipated we would use our authority to sit en banc to address these minor conflicts

in our case law and resolve them ourselves. And, of course, if this Court sitting en

banc gets it wrong, an opinion explaining the conflicting cases and the detailed

reasons underlying our interpretation of them would issue from this Court, producing

 3 Nevertheless, it is “an established rule to abide by former precedents, stare decisis, where
the same points come up again in litigation, as well to keep the scale of justice even and steady, and
not liable to waver with every new judge’s opinion, as also because, the law in that case being solemnly
declared and determined what before was uncertain, and perhaps indifferent, is now become a
permanent rule, which it is not in the breast of any subsequent judge to alter or swerve from according
to his private sentiments; he being sworn to determine, not according to his private judgment, but
according to the known laws and customs of the land, – not delegated to pronounce a new law, but to
maintain and expound the old one – jus dicere et non jus dare [to declare the law, not to make the
law].” McGill v. Town of Lumberton, 218 N.C. 586, 591, 11 S.E.2d 873, 876 (1940) (citation omitted).

 3
 ROUTTEN V. ROUTTEN

 BERGER, J., concurring

an excellent vehicle by which the Supreme Court can grant review and announce the

correct rule.

 Unfortunately, we have yet to sit en banc. To date, there have been 61 petitions

filed requesting this Court to hear cases en banc, and we have declined to hear every

single one. Perhaps some of my fellow judges on this Court are skeptical of whether

the Supreme Court wants us to resolve our own conflicts. Some may be convinced

that this resolution is not ours, but the business of our higher court. Others may

have different motives. Whatever the reasons we have declined to sit en banc may

be, legitimate or otherwise, encouragement and accountability from the appellate bar

would be beneficial. Of course, if the Supreme Court believes this Court should

resolve our conflicts en banc, it would be helpful for that Court to say so.

 4
 No. COA17-1360 – Routten v. Routten

 INMAN, Judge, concurring in part and dissenting in part.

 I concur in the majority opinion affirming the Alimony Order and Attorney

Fees Order. I respectfully dissent from the majority opinion vacating the trial court’s

conclusions of law regarding custody and its decree awarding full custody to Plaintiff.

The majority’s holding in this respect is precluded by established precedent of the

North Carolina Supreme Court and this Court and threatens to upend the stability

of decisions by our trial courts in child custody disputes between parents.

 The trial court’s Amended Order denying Defendant custody and visitation

complied with Section 50-13.5 of the North Carolina General Statutes, which

provides:

 In any case in which an award of child custody is made in
 a district court, the trial judge, prior to denying a parent
 the right of reasonable visitation, shall make a written
 finding of fact that the parent being denied visitation rights
 is an unfit person to visit the child or that such visitation
 rights are not in the best interest of the child.

N.C. Gen. Stat. § 50-13.5(i) (2018) (emphasis added). “Where a statute contains two

clauses which prescribe its applicability and clauses are connected by the disjunctive

‘or’, application of the statute is not limited to cases falling within both clauses but

applies to cases falling within either one of them.” Grassy Creek Neighborhood All.,

Inc. v. City of Winston-Salem, 142 N.C. App. 290, 297, 542 S.E.2d 296, 301 (2001)

(internal quotation marks and citations omitted). Ultimately the trial court found
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

that “[i]t is not in the children’s best interests to have visitation with Defendant.”

Given this finding, pursuant to N.C. Gen. Stat. § 50-13.5(i), the trial court had the

authority to suspend Defendant’s visitation with the children without finding that

Defendant was a person unfit to visit them.

 The trial court’s express finding that visitation with Defendant was not in the

children’s best interest followed several other findings by the trial court of

Defendant’s harmful interactions with her children, including: (1) Defendant’s

behavior necessitated that her daughter have a safety plan while in her custody; (2)

Defendant engaged in physical and verbal altercations with her daughter; (3)

Defendant was trespassed from her son’s preschool as a result of her behavior there;

(4) she had difficulty controlling her son’s behavior; (5) she removed her son from

preschool contrary to the school’s recommendation and without Plaintiff’s knowledge

or consent; and (6) her daughter’s emotional distress was caused by spending time

with Defendant. Each of these findings was supported by competent evidence.

 The majority does not hold that the trial court erred in its findings of fact

regarding Defendant’s harmful interactions with the children. The majority does not

hold that the trial court erred in finding that visitation with Defendant was not in

the children’s best interest. Rather, the majority holds that Defendant has a

constitutional right to visitation with her children which has been violated by the

trial court and remands the matter for “constitutionally required findings based upon

 2
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

clear, cogent, and convincing evidence.” In support of today’s holding, the majority

relies on Moore v. Moore, 160 N.C. App. 569, 587 S.E.2d 74 (2003), a decision

disavowed by this Court—and one directly contrary to controlling North Carolina

Supreme Court precedent—which held that when resolving a custody dispute

between two parents, a trial court cannot suspend one parent’s visitation rights

absent a finding that either the parent is unfit or engaged in conduct that is

inconsistent with his or her protected status. Id. at 573, 587 S.E.2d at 76.

 Moore held that in a custody dispute between a child’s natural or adoptive

parents, “absent a finding that parents (i) are unfit or (ii) have neglected the welfare

of their children, the constitutionally-protected paramount right of parents to

custody, care, and control of their children must prevail.” Id. at 572, 587 S.E.2d at

76 (internal quotation marks and citation omitted). As support for this holding,

Moore quoted Petersen v. Rogers, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994),

which established a constitutionally-based presumption favoring a parent in a

custody dispute with a non-parent (the “Petersen presumption”).4 But unlike Moore,

Petersen involved a custody conflict between parents and non-parents. 337 N.C. at

 4 Petersen quoted the holding in Stanley v. Illinois, 405 U.S. 645, 31 L.Ed.2d 551 (1972), that “
‘[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose
primary function and freedom include preparation for obligations the state can neither supply nor
hinder.’ ” 337 N.C. at 400-01, 445 S.E.2d at 903 (emphasis omitted) (quoting Stanley, 405 U.S. at 651,
31 L.Ed.2d at 559). Relying on Stanley, the Petersen Court noted that a natural parent has a
“constitutionally-protected paramount right to custody, care, and control of their child.” Id. at 400, 445
S.E.2d at 903.

 3
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

399, 445 S.E.2d at 902. Moore did not acknowledge that factual distinction or provide

any analysis to support extending the Petersen holding to a dispute between two

parents. Nor did Moore acknowledge controlling Supreme Court precedent expressly

holding that Petersen does not apply to custody disputes between two parents, such

as the case we decide today.

 Significantly, after Petersen was decided and a few months prior to Moore, the

North Carolina Supreme Court, in a child custody dispute between a father and

maternal grandmother, explained the distinction between proceedings involving (1)

a parent versus a non-parent, and (2) a parent versus the other parent:

 We acknowledged the importance of [a parent’s] liberty
 interest nearly a decade ago when this Court [in Petersen]
 held: absent a finding that parents (i) are unfit or (ii) have
 neglected the welfare of their children, the constitutionally
 protected paramount right of parents to custody, care, and
 control of their children must prevail. The protected
 liberty interest complements the responsibilities the
 parent has assumed and is based on a presumption that he
 or she will act in the best interest of the child. The
 justification for the paramount status is eviscerated when
 a parent’s conduct is inconsistent with the presumption or
 when a parent fails to shoulder the responsibilities that are
 attendant to rearing a child. Therefore, unless a natural
 parent’s conduct has been inconsistent with his or her
 constitutionally protected status, application of the “best
 interest of the child” standard in a custody dispute with a
 nonparent offends the Due Process Clause of the United
 States Constitution. Furthermore, the protected right is
 irrelevant in a custody proceeding between two natural
 parents, whether biological or adoptive, or between two
 parties who are not natural parents. In such instances, the
 trial court must determine custody using the “best interest

 4
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

 of the child” test.

Owenby v. Young, 357 N.C. 142, 145, 579 S.E.2d 264, 266-67 (2003) (internal

quotation marks and citations omitted) (emphasis added). Moore failed to cite

Owenby, much less attempt to distinguish its holding that a parent’s constitutional

right is irrelevant in a custody dispute with the other parent. Moore was not pursued

further on appeal, so its conflict with Owenby was not reviewed by the Supreme

Court.5

 The error of Moore was ultimately noted a decade later, in a unanimous

decision written by a judge who had concurred in Moore. In Respess v. Respess, 232

N.C. App. 611, 754 S.E.2d 691 (2014), that judge, writing for a unanimous panel,

concluded that “the standard articulated in Moore directly conflicts with prior

holdings of . . . our Supreme Court and therefore does not control our decision in the

instant case.” Id. at 624-25, 754 S.E.2d at 700-01. Respess explained that prior to

Moore, precedent consistently held:

 (1) the standard in a custody dispute between a child’s
 parents is the best interest of the child; (2) the applicable
 burden of proof is the preponderance of the evidence; (3)

 5 Although Moore was not appealed, our Supreme Court passed on the opportunity to ratify or
adopt the holding of Moore two years later in In re T. K., D.K., T. K., & J. K., 171 N.C. App. 35, 613
S.E.2d 739, aff’d 360 N.C. 163, 622 S.E.2d 494 (2005). That appeal followed a split decision by this
Court. The dissent in In re T.K. asserted—as the majority holds here—that a trial court’s order
awarding visitation to the father was in error because, pursuant to Moore, the trial court did not make
findings that the mother’s “conduct was inconsistent with her protected status as a parent,” or, by
clear and convincing evidence, that the mother was “unfit as a parent.” Id. at 44, 613 S.E.2d at 744
(Tyson, J., dissenting). On review, the Supreme Court affirmed the majority opinion per curiam. In
re T. K., 360 N.C. 163, 622 S.E.2d 494.

 5
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

 the principles that govern a custody dispute between a
 parent and a non-parent are irrelevant to a custody action
 between parents; and (4) a trial court complies with N.C.
 Gen. Stat. § 50–13.5(i) if it makes the finding set out in the
 statute.

Id. at 627, 754 S.E.2d at 702. Respess acknowledged our Supreme Court’s holding in

In re Appeal of Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989), that a panel

of this Court is bound by a prior decision by another panel of this Court deciding the

same issue, but held that rule of decision did not apply to bind the panel to follow

Moore, because “this Court has no authority to reverse existing Supreme Court

precedent.” Respess, 232 N.C. App. at 625, 754 S.E.2d at 701. Respess was never

appealed and, until our Supreme Court tells us otherwise, Respess remains good law

on both points.

 Today’s majority opinion quotes a portion of the opinion in Owenby, but

conspicuously omits the Supreme Court’s key holding directly controlling in this case,

that a constitutional analysis “is irrelevant in a custody proceeding between two

natural parents” and that “[i]n such instances, the trial court must determine custody

using the ‘best interest of the child’ test.” Owenby, 357 N.C. at 145, 579 S.E.2d at

267; see also Respess, 232 N.C. App. at 626, 754 S.E.2d at 701-02 (“Moore’s holding

that the Petersen presumption applies to a trial court’s decision to deny visitation

rights to a non-custodial parent [in a dispute with the custodial parent] contradicts

our Supreme Court’s holding [in Owenby] that Petersen is ‘irrelevant’ to a dispute

 6
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

between parents and that in such instances, the trial court must determine custody

using the ‘best interest of the child’ test.” (internal quotation marks, citation, and

brackets omitted)).

 The majority also fails to distinguish the facts of this case from Respess, or to

address the effect of Owenby on Moore’s precedential value. The majority’s holding

today deviates from years of consistent precedent and confuses an otherwise settled

area of law affecting families across our state.6

 The majority asserts that Respess violated the North Carolina Supreme Court’s

holding in In re Appeal of Civil Penalty that one panel of this Court is bound by a

previous panel’s decision on the same issue. But the majority fails to acknowledge

that Respess explicitly held that In re Civil Penalty did not require this Court to

repeat the holding in Moore that was contrary to controlling precedent by our

Supreme Court. See Respess, 232 N.C. App. at 629, 654 S.E.2d at 703.

 Earlier this year, in a unanimous opinion, this Court expressly adopted the

holding in Respess which interpreted and distinguished In re Civil Penalty to disavow

 6 As noted by the majority, until it was disavowed by Respess as violating controlling precedent,
Moore was cited in subsequent decisions by this Court for its holding directly contrary to Owenby. But
see Everette v. Collins, 176 N.C. App. 168, 173-74, 625 S.E.2d 796, 799-800 (2006) (distinguishing
disputes between parents and non-parents, involving the “constitutionally protected status afforded
parents,” and disputes between only parents, applying the “best interest of the child” determination
without constitutional analysis). But none of the decisions citing Moore for that holding acknowledged
the conflict. Since Respess, Moore has been cited by this Court for its holding that a trial court’s
findings of fact must resolve factual issues rather than merely reciting witness testimony, but it has
not been cited in a majority decision for the proposition disavowed in Respess. See State v. Robinson,
__ N.C. App. __, __,805 S.E.2d 309, 317 (2017); Lueallen v. Lueallen, __ N.C. App. __, __, 790 S.E.2d
690, 698 (2016); Kelly v. Kelly, 228 N.C. App. 600, 610, 747 S.E.2d 268, 278 (2013).

 7
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

Moore. See Martinez v. Wake Cty. Bd. of Educ., __ N. C. App. __, __, 813 S.E.2d 659,

667 (2018) (discussing Respess at length and holding that “it is clear that where a

prior ruling of this Court is in conflict with binding Supreme Court precedent, we

must follow the decision of the Supreme Court rather than that of our own Court”).

Today’s decision cannot be harmonized with Respess or Martinez.

 The jurisprudential history of In re Civil Penalty, contrasted with the history

of Moore, Respess, and today’s decision, demonstrates the majority’s error in this case.

In re Civil Penalty arose from a conflict regarding the precedent established by the

North Carolina Supreme Court in State ex rel. Lanier v. Vines, 274 N.C. 486, 490, 164

S.E.2d 161, 163 (1968). Lanier held that a statute allowing the Commissioner of

Insurance to impose a monetary penalty of up to $25,000 for violations of

administrative regulations improperly delegated power vested exclusively in the

judiciary by Art. IV, § 3, of the North Carolina Constitution. Id. at 497, 164 S.E.2d

at 168. Almost twenty years later, in North Carolina Private Protective Services

Board v. Gray, Inc., 87 N.C. App. 143, 360 S.E.2d 135 (1987), this Court rejected a

constitutional challenge to a statute authorizing the North Carolina Private

Protective Services Board to impose monetary penalties of up to $2,000 for violations

of agency regulations. Id. at 147, 360 S.E.2d at 138. Gray held that “[t]his case is

readily distinguishable from the situation in Lanier.” Id. at 147, 360 S.E.2d at 138.

 8
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

 One year later, in In re Civil Penalty, 92 N.C. App. 1, 373 S.E.2d 572 (1989), in

a split decision, this Court addressed the constitutionality of a statute authorizing

the Department of Natural Resources to assess an administrative penalty against

individuals who violated the Sedimentation Pollution Act. Id. at 3, 373 S.E.2d at 573.

The majority opinion concluded that this Court was bound by the decision in Lanier,

and not by Gray, reasoning that the “rationale [in Gray] directly contradicts the

rationale and result of Lanier.” Id. at 16, 373 S.E.2d at 581. The dissent asserted

that the majority’s failure to follow Gray’s interpretation of Lanier “unjustifiably

overrule[d]” Gray, which “was correctly decided and should have governed the court’s

decision in the case before us.” Id. at 21, 373 S.E.2d at 583 (Becton, J., dissenting).

On review, the North Carolina Supreme Court agreed with the dissent and concluded

that “the effect of the majority’s decision here was to overrule Gray. This it may not

do.” In re Civil Penalty, 324 N.C. at 384, 379 S.E.2d at 37. The Supreme Court went

on to explain, in a holding quoted by this Court in dozens of decisions over the past

quarter century, that, “[w]here a panel of the Court of Appeals has decided the same

issue, albeit in a different case, a subsequent panel of the same court is bound by that

precedent, unless it has been overturned by a higher court.” Id. at 384, 379 S.E.2d at

37.

 Unlike this Court’s decision in Gray, which addressed and distinguished the

North Carolina Supreme Court’s decision in Lanier, this Court’s decision in Moore

 9
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

utterly failed to acknowledge the Supreme Court’s decision in Owenby.7 A citation to

Owenby is nowhere to be found in Moore. The assertion by the majority today that

Moore applied the holding of Owenby misrepresents the reported decision.

 Unlike Moore, Respess cited Owenby, discussed it at length, and characterized

the Supreme Court’s statement that the Petersen presumption is “irrelevant in a

custody proceeding between two natural parents” as a “holding” in Owenby. Respess,

232 N.C. App. at 625-26, 754 S.E.2d at 701-02. As Respess has not been overturned

by a higher court, we are thus bound by its interpretation of Owenby, and must

conclude that the language ignored by the majority in today’s decision is a holding by

our Supreme Court. See In re Civil Penalty, 324 N.C. at 384, 379 S.E.2d at 37. And

it is directly controlling here. This Court’s holding in Moore must yield to the

Supreme Court’s holding in Owenby. We do not have the “authority to overrule

decisions of the Supreme Court of North Carolina and [have a] responsibility to follow

those decisions, until otherwise ordered by the Supreme Court.” Cannon v. Miller,

313 N.C. 324, 324, 327 S.E.2d 888, 888 (1985).

 7 I do not suggest that the panel in Moore deliberately ignored Owenby. The Supreme Court
issued its decision in Owenby in May 2003; Moore was heard in this Court just three months later, in
August 2003. Given the typical lapse of months between the submission of briefs and hearing before
this Court in most cases, it is likely that Owenby was decided by the Supreme Court after briefing in
Moore was completed, and that neither counsel nor the panel deciding Moore realized that binding
precedent intervened. Such an error reflects not defiance or judicial recklessness but merely the very
human occurrence of overlooking a new precedent when deciding one among a tremendous volume of
cases heard by panels of this Court. By contrast, today’s majority violates precedent specifically called
to its attention.

 10
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

 The rule of decision established by In re Civil Penalty applies when two panels

of this Court issue conflicting decisions on the same issue without distinguishing the

facts or applicable law, passing each other like ships in the night. But In re Civil

Penalty does not bind a panel of this Court to a decision by a prior panel that conflicts

with Supreme Court precedent. The conflict between a decision by this Court and

one by our Supreme Court is more akin to a row boat passing an ocean liner. It is

resolved not by In re Civil Penalty but by stare decisis.

 “A primary goal of adjudicatory proceedings is the uniform application of law.

In furtherance of this objective, courts generally consider themselves bound by prior

precedent, i.e., the doctrine of stare decisis.” Bacon v. Lee, 353 N.C. 696, 712, 549

S.E.2d 840, 851-52 (2001). The doctrine of stare decisis “is a maxim to be held forever

sacred.” Commonwealth v. Coxe, 4 U.S. 170, 1 L. Ed. 786, 4 Dall. 170, 192 (Pa. 1800).

Because it is so fundamental to our jurisprudence, the doctrine is generally applied

without comment and is described at length only in dissenting opinions. “Adhering

to this fixed standard ensures that we remain true to the rule of law, the consistent

interpretation and application of the law.” State ex. rel. McCrory v. Berger, 368 N.C.

633, 651, 781 S.E.2d 248, 260 (2016) (Newby, J., concurring in part and dissenting in

part). “[T]here must be some uniformity in judicial decisions . . . or else the law itself,

the very chart by which we are sailing, will become as unstable and uncertain as the

 11
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

shifting sands of the sea[.]” State v. Bell, 184 N.C. 701, 720, 115 S.E. 190, 199 (1922)

(Stacy, J., dissenting).

 This Court in Respess correctly held that it was not bound by In re Civil Penalty

to follow Moore’s holding—which plainly diverged from Supreme Court precedent.

And, as Respess distinguished In re Civil Penalty and explained why it did not apply—

i.e., that it did not bind the panel to Moore—we are bound by that interpretation,

ironically pursuant to In re Civil Penalty. Stated differently, the majority charts the

same wayward course that previously led this Court to run aground even though our

Supreme Court has built us a lighthouse in In re Civil Penalty; just as Gray

constituted a binding interpretation of Lanier, Respess provided binding

interpretations of Owenby8 and In re Civil Penalty. We are bound by Respess unless

and until it is disavowed by our Supreme Court.

 The majority opinion today vacates the conclusions of law and custody portions

of the Amended Order based on the trial court’s failure to include findings only

deemed necessary in Moore. Today’s decision, like the decision in Moore, conflicts

with binding precedent and the plain language of N.C. Gen. Stat. § 50-13.5(i), the

governing statute. Because the dispute is exclusively between the children’s parents,

the trial court properly applied the “best interest of the child” test. See Adams v.

 8 As recounted supra, there is nothing in Moore to indicate it was interpreting or applying
Owenby, let alone that it was cognizant of the decision. Thus, Respess was not bound by any
interpretation of Owenby in Moore, as none appears therein.

 12
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

Tessener, 354 N.C. 57, 61, 550 S.E.2d 499, 502 (2001) (“In a custody proceeding

between two natural parents (including biological or adoptive parents), or between

two parties who are not natural parents, the trial court must determine custody based

on the ‘best interest of the child’ test.”).

 The majority today also asserts—again citing Moore—that the “Amended

Order purported to deny Defendant all custody and visitation with her children,

effectively terminating her parental rights.” A loss of visitation or custody in a

Chapter 50 proceeding between two parents is fundamentally different from the

termination of parental rights, which can only be accomplished in a proceeding

pursuant to Chapter 7B. “Our jurisprudence has long recognized significant

differences between a child custody order, which is subject to modification upon a

showing of changed circumstances, and orders for adoption or for termination of

parental rights, which are permanent.” Respess, 232 N.C. App. at 626, 754 S.E.2d at

702 (citations omitted). Among other things, the standard of proof prescribed by

Chapter 50 for custody disputes between parents is a preponderance of the evidence;

by contrast, the standard of proof prescribed by Chapter 7B for termination of

parental rights is clear and convincing evidence. N.C. Gen. Stat. § 7B-1110(b) (2018);

Speagle v. Seitz, 354 N.C. 525, 533, 557 S.E.2d 83, 88 (2001).

 13
 ROUTTEN V. ROUTTEN

 Inman, J., concurring in part, dissenting in part

 For the foregoing reasons, I respectfully dissent from the majority opinion

regarding the award of child custody and would affirm the Amended Order’s

conclusions of law and decree regarding custody.

 Because I dissent from the majority opinion vacating the trial court’s decree

suspending Defendant’s right to visitation with her children, I disagree with the

majority’s holding that the trial court erred by delegating to Plaintiff the sole

discretion to allow, or deny, telephone contact between Defendant and their children.

That is, if Defendant has no right to visitation, the trial court’s delegation of

discretion to Plaintiff is mere surplusage, albeit admittedly confusing. Assuming

arguendo that the trial court erred in this portion of its decree, it was surplusage that

does not require appellate review.

 In sum, I concur in the majority opinion affirming the Alimony Order and

Attorney Fees Order. I respectfully dissent from the majority opinion vacating the

trial court’s conclusions of law and its decree awarding full custody to Plaintiff.

 14